SCHAUER, J.
From a judgment for $12,825 in plaintiff’s favor in his action to recover the reasonable value of services rendered by him as an attorney, both plaintiff and defendants *334 appeal. Plaintiff contends that the award is inadequate, and defendants, claiming breach of contract by plaintiff,[1] urge that judgment should have been in their favor. We have concluded that plaintiff has established a prevailing right, and that the judgment should be reversed and the value of the services redetermined.
The contract between the parties is evidenced by writings in the form of letters. These, and other writings between the parties, appear in the margin. The first is dated May 29, 1951, and constitutes the contract by which defendants (hereinafter sometimes referred to as Fellner) employed plaintiff to represent them as attorney in certain litigation.[2] By this contract Moore was employed on a contingent fee basis to prosecute an action by Fellner against one Steinbaum for damages arising from breach of contract, and for the same contingent fee to also defend Fellner in an action brought *335 against him by one Berzon for a broker’s commission arising out of the same transaction. Moore’s compensation for the dual services was to be 20 per cent of any amount recovered from Steinbaum in a settlement before trial and 25 per cent in case of trial. He was paid $500 on account of costs and an additional $500 “as an advance payment which will be a retainer.” The two actions were consolidated for trial and resulted in (1) a judgment of $104,500 in favor of Fellner and against Steinbaum, and (2) a judgment of $20,000 against Fellner and in favor of Berzon, which was settled for $17,500.
Steinbaum filed notice of appeal. Moore testified that thereafter his office “went right on handling the ease on appeal” as various matters arose needing attention, including arranging for a clerk’s and a reporter’s transcript, “authorization for all exhibits to be sent up to the District Court of Appeal and any and all other preparations which were incidental to and short of the writing of the brief and the details going to that point,” as well as entering into a stipulation under which $110,000 in United States Treasury Certificates were deposited by Steinbaum in lieu of an undertaking on appeal.
On March 2, 1954, before appellant Steinbaum’s brief had been received, and when the services called for by the contract, insofar as they had then accrued, had been faithfully performed, Moore wrote to Mr. and Mrs. Fellner stating that if they wished him to handle the appeal his fee would be $2,000 plus the necessary costs.[3] On March 3, 1954, Mr.
*336 Fellner replied,[4] referring to the provision of the employment contract2 reading as follows: “It is understood that this agreement covers our understanding to the conclusion of these two cases in the Superior Court and, at our option, in any of the higher courts." Moore replied on March 10,[5] and *337 on March 13 Fellner wrote Moore[6] again calling attention to the above-quoted contract provision and declaring, among *338 other things, that “We must consider that you have deliberately breached our agreement of May 29, 1951. For that reason 1) we consider your relationship as our attorney terminated . . . and will seek other counsel to represent us in this litigation.’’ Moore replied on March 19.[7] Moore declined to sign a substitution of attorneys and Fellner obtained an order in the District Court of Appeal substituting other counsel on the appeal. Thereafter on June 30, 1954, Moore again wrote to Fellner.[8] The judgment against Steinbaum was affirmed on appeal (Fellner v. Steinbaum (1955), 132 Cal.App.2d 509 [282 P.2d 584]), and Fellner was paid some $117,000 (which included interest) thereunder. The substituted counsel charged Fellner $1,000 for handling the appeal.
*339 From the writings above listed and other evidence the trial court found, so far as here material, as follows: plaintiff Moore demanded from Fellner $2,000 as additional compensation for handling the appeal and refused, after demand by Fellner, to handle the appeal unless he was paid the $2,000; he was discharged by Fellner, and “it is not true that the defendants discharged plaintiff without cause or justification”; on June 30, 1954, “plaintiff in writing rescinded” his contract with defendants; “at the time of his discharge plaintiff had substantially performed his part of the agreement with defendants, and the services rendered by him were of value to the defendants”; the “reasonable value of the professional services rendered ... by plaintiff ... to the time he was discharged is the sum of $13,325.00” of which he had been paid on account the sum of $500. As conclusions of law the court declared that plaintiff, under the terms of his contract with Fellner, was “required to represent” the latter on the appeal from the judgment against Steinbaum without further charge; that plaintiff’s demand for an additional fee was wrongful and a breach of his contract; but that plaintiff is entitled to recover from Fellner the reasonable value of his services, less the $500 paid on account. Judgment was thereupon entered in plaintiff’s favor for $12,825, and these appeals by both parties followed.
As ground for reversal, defendants contend that plaintiff was required to represent them on the Steinbaum appeal without further compensation, that he wrongfully demanded payment of an additional fee of $2,000 and refused to render further services on the appeal unless paid that sum, and that he thereby breached the employment contract and is therefore entitled to no compensation.
Plaintiff does not dispute that he was obligated to handle the appeal if Fellner so requested, and seems not now to contend that he was entitled to demand an additional fee for so doing. Plaintiff does, however, urge that he was to “do so [only] when the client exercised his option and notified him,” and that the option was never exercised. This contention, on the record before us, is without substantial merit. Previous to his letter of March 2, 1954, to Fellner, plaintiff had already, with Fellner’s consent, handled all steps proper to be performed up to that time relative to the appeal, had notified Fellner of the charges for appeal transcripts, and had been advised by Fellner that these and additional costs would be paid. He had not written the respondent’s brief, but *340 appellant’s opening brief had not yet been received. It further appears from plaintiff’s testimony that he had originally drafted the employment contract between the parties but that the words “and, at our option, in any of the higher courts,” as well as the provision that Fellner was not to pay as costs the “fees to any other attorneys you [plaintiff] may employ in these matters,” were inserted by Fellner in the contract; and, further, that “one of the réasons for . . . [Fellner’s insertions was] to make sure that if the case were lost, he would have no obligation of any kind to me or anyone employed by me for any services rendered in this matter . . . and . . . would have the right to . . . have somebody else prosecute the appeal or take whatever action they cared to after the case might be lost in the Superior Court.” It is thus inferrible that Moore did not understand the option provision to apply if, as actually occurred, the case was won in the trial court. Moreover, although Fellner testified that following the trial he did not talk to Moore “specifically” about “these appeal problems,” he did testify to “two or three” personal conversations and a “few” telephone conversations concerning their progress with Moore’s office associate, Mr. Lindelof, with whom Moore had previously directed that Fellner “always should talk.” Moore himself testified freely that “whatever was done by my office I take the full responsibility for it and it is not that of either Mr. Lindelof or anyone else in the office other than my own and done under my authority and by my delegation.” Thus the trial court could infer that Moore was fully aware, prior to his letter of March 2, that Fellner expected and intended that Moore would handle the appeal, and that no formal notice of exercise by Fellner of his option was required.
Moore, although not contending that he was entitled to an additional fee of $2,000, urges that after all he did not demand an additional fee for the appeal or make “the fee itself a condition precedent to the attorney going' ahead with the appeal.” The language he used in the letter of March 2, was: “We should like to have you advise as soon as possible as to whether you desire this office to handle the appeal and if so, our fee will be $2,000.00, plus the necessary costs above outlined.” In his letter of March 10 to Fellner, Moore referred again to his statement that “should you care to have this office represent you in the appeal, . . . our fee would be $2,000.00 in addition to any costs on appeal. ” It is apparent that the trial court was warranted in interpreting this lan *341 guage as a demand by Moore for payment of an additional fee and a refusal to handle the appeal unless it was paid, and in concluding that plaintiff’s demand was “wrongful and a breach of, his contract.” It follows that Fellner was not bound to make further demands for performance by Moore but was justified in accepting his conduct as a termination of “your relationship as our attorney”6 and in employing other counsel to handle the appeal.
However, it does not follow that Moore’s right to compensation for services already performed was thereby forfeited. Although it has been held that an attorney who wrongfully abandons or'withdraws from a case which he has contracted to handle, or has been discharged for cause by the client, may not recover compensation (see 7 C.J.S. 1031, §169, subd. a (3), b.; 5 Am.Jur. 363, §171), this approach appears to have grown in part from situations in which the contract of employment was considered to be entire and indivisible. (See Cahill v. Baird (1902), 7 Cal.Unrep. 61 [70 P. 1061] ; 7 C.J.S. 943, §110; cf. Oliver v. Campbell (1954), 43 Cal.2d 298, 304 [3] [273 P.2d 15].) On the other hand recovery for services rendéred up to the date of a discharge for cause has likewise been upheld where the agreed compensation was payable to the attorney in equal monthly payments; i.e., where the services seemingly were regarded by the court as divisible. (See Moser v. Western Harness Racing Assn. (1948), 89 Cal.App.2d 1, 3, 13-14 [200 P.2d 7] ; cf. Salopek v. Schoemann (1942), 20 Cal.2d 150 [124 P.2d 21], affirming, on appeal of assignee of attorney discharged for cause, judgment of $300 as reasonable value of his services, claimed by him to be an inadequate award.)
In the present case it appears that the parties at the time of entering into the employment contract contemplated that the attorney’s services should be divisible into those rendered (1) in the superior court, and (2) on any appeal from a superior court judgment. The expression “and, at our option, in any of the higher courts,” was inserted into the contract' by the client, Fellner, who thus clearly indicated that he wished to' reserve the right to change counsel on appeal. If services are to be divisible for the benefit of the client, at his option, then it follows that they may also be treated as divisible for the benefit of the attorney, if the interests of justice so require. Especially is this true in this case where plaintiff had completed his services in connection with defending Fellner in, the Berzon action and had not *342 failed to perform any service which had become due for performance up to the time of the disagreement. Fellner did not await any actual failure to perform. He had a right to, and he did, elect to treat the contract as ended by reason of Moore’s unjustified demands. Thus, at least in effect, he discharged Moore for cause. No reason whatsoever appears why the court cannot fully protect Fellner against any loss on account of plaintiff’s default in relation to his obligations on appeal and at the same time preclude the former’s seeming unjust enrichment, by awarding reasonable compensation to plaintiff for his services in the Berzon action and in the Steinbaum action up to the time of breach. Consequently, under the above holdings the attorney is entitled to reasonable compensation for services already rendered up to the time of termination of his attorney-client relationship with Fellner, less any expense or other damage to which the client was subjected by the default of Moore.
As declared in Salopek v. Schoemann (1942), supra, 20 Cal.2d 150, 153 [1], 155 [3], “if an attorney is discharged for sufficient cause he is entitled to no more than the reasonable value of his services rendered prior to his discharge, ’ ’ has “no cause to complain and is fully protected by payment of the reasonable value,” and may not recover the full contract amount (at least if such amount exceeds the reasonable value of the services). On the other hand in a case in which the discharge appears to have been without cause, it has been held that where the contract amount is less than the reasonable value of the services, recovery is nevertheless limited to the fee fixed by the contract. (See Oliver v. Campbell (1954), supra, 43 Cal.2d 298, 306 [9].) In the present ease plaintiff sought and was awarded judgment based on reasonable value.[9] Under the rules above stated his recovery must not, of course, exceed the fee fixed by the employment contract, less expenses to which the client (defendant) was put by the change of counsel.
Defendants urge, however, that even if plaintiff is entitled to judgment, his action was premature because filed before final disposition of the Steinbaum ease on appeal and recovery by Fellner from Steinbaum. This action was filed December 1, 1954; the Steinbaum judgment was affirmed on appeal on April 25,1955 (Fellner v. Steinbaum (1955), supra, 132 Cal.App.2d 509), and hearing by the Supreme Court *343 was denied on June 23, 1955. It appears that before this action went to trial on May 22, 1956, Fellner had collected from Steinbaum. In Jones v. Martin (1953), 41 Cal.2d 23, 27 [256 P.2d 905], the rule is stated that “An attorney employed under a contingent fee agreement who is wrongfully discharged by his client, is generally entitled to the same amount of compensation and under the same contingency as if he had completed the services contemplated. [Citations.] ” (Italics added.) If the recovery of an attorney' wrongfully discharged under a contingent fee employment is limited to the same contingency as if he had completed the services, then one whose discharge has been for cause should be similarly limited; i.e., even though the measure of his recovery is the reasonable value of his services rather than (and not in excess of) the full contract amount, he should not have judgment until the contingency has occurred—here, recovery by Fellner from Steinbaum. However, the unfavored defense that the action was prematurely brought is simply matter of abatement which must be pleaded in proper time or it is waived. Further, if the defense has ceased to exist at the time defendant seeks to raise it, there is no occasion to consider whether it has been waived, as it may be disregarded. (Radar v. Rogers (1957), 49 Cal. 243, 250 [6, 7] [317 P.2d 17].) In the present ease defendant first raised the point of premature filing of the action by an objection to the introduction of evidence and by motion for nonsuit when the case was on trial and at a time when the basis of the objection had been rendered nonexistent by Fellner’s actual recovery from Steinbaum. Under such circumstances the court was justified in ruling against the plea.
Plaintiff on his part contends (1) that the valuation placed by the trial court on his services is inadequate and not supported by the evidence, and (2) that the court erred in refusing to consider or place any value upon the services of plaintiff’s office associate, Lindelof.
Plaintiff testified that in his opinion the reasonable value of services rendered by him and Lindelof to Fellner was not less than $40,000. Other attorneys testifying as experts gave valuations of $25,000 and of $10,000. Plaintiff further testified as to the time he himself had spent on the Fellner matters, as well as that Lindelof, who was employed by plaintiff, had devoted some 450 hours to assisting him in preparation of the cases. Fellner likewise testified that most *344 of his communications and contacts with plaintiff’s office were made with Lindelof rather than with plaintiff personally, thus making it clear that Fellner’s employment of plaintiff contemplated the participation of other attorneys in the services rendered by plaintiff, although the cost of their services was by the employment contract included in the fee to be paid to plaintiff, rather than being charged as additional or separately itemized costs to Fellner. It is thus apparent that Lindelof’s services were included in those provided by Moore and should be considered in determining the reasonable value of the services rendered by plaintiff to Fellner, and that the trial court erred in its express refusal to consider the time spent on the Fellner cases by Lindelof. Under such circumstances the matter should be remanded for a new determination in the trial court. (Arenson v. National Auto. & Gas. Ins. Co. (1957), 48 Cal.2d 528, 540 [8] [310 P.2d 961].)
The judgment is reversed and the cause remanded for further proceedings not inconsistent with the views hereinabove expressed, each party to bear his or their own respective costs on appeal.
Gibson, C. J., Shenk, J., Carter, J., and McComb, J., concurred.

Defendants by their cross-complaint sought a declaration that they owed plaintiff nothing.

“May 29, 1951
“Mr. Prentiss Moore
Attorney at Law
453 South Spring Street
Los Angeles 13, California.
“Dear Mr. Moore:
“This will confirm our oral understanding that you are to represent myself and my wife in the prosecution of a claim against Morris Steinbaum arising from a breach of contract dated the fourteenth day of April 1951 and also that you are to defend an action against us filed by Irvin D. Berzon in the Superior Court, being Action No. 585893.
“As compensation for your services in these matters we agree to pay you 20% of any amount recovered from Morris Steinbaum before trial and 25% if the action proceeds to trial, including three days before the start of the trial. We agree to advance all necessary costs, including court costs, depositions or any other costs incurred incident to the preparation of the case such as appraisers’ fees and expert witness’ fees, but not fees to any other attorneys you may employ in these matters. We are depositing at this time with you §500.00 on account of such costs and agree to make available any additional amounts necessary for these purposes upon notice from you. However, all these advances will be deducted from the amount to be recovered and the compensation of 20% or 25% resp. will be based on the net amount.
“In addition to this we are depositing another §500.00 as an advance payment which will be a retainer. However, this amount will be deducted from your compensation of 20% or 25% resp.
“It is understood that this agreement covers our understanding to the conclusion of these two cases in the Superior Court and, at our option, in any of the higher courts.
“Tours very truly
Leopold Fellner
Clara M. Fellner
“Approved:
Prentiss Moore”

‘‘March. 2, 1954
“Mr. and Mrs. Leopold Fellner
9970 West Pico Blvd.
Los Angeles, California
“Dear Mr. and Mrs. Fellner:
“The deposit of $110,000.00 of Treasury Certificates has heen made by the defendant Steinbaum and we have received notification that the Clerk’s Transcript has been prepared and the appeal is proceeding.
“The reason for writing you at this time is to advise you that in our opinion the respondents’ briefs and the costs on appeal will approximate $500.00, of course, depending upon the length of our reply to the appellant’s brief. We should like to have you advise as soon as possible as to whether you desire this office to handle the appeal and if so, our fee will be $2,000.00, plus the necessary costs above outlined. Should you desire any other firm to handle the appeal, kindly notify us as soon as possible and I am enclosing the only current obligation which is now due, the cost of the balance of the Reporter’s Transcript in the amount of $16.00.
“Respectfully,
Moore, Webster, Lindelof & Hughes
Prentiss Moore
J
Prentiss Moore”

“March 3, 1954
“Mr. Prentiss Moore
417 South Hill Street
Los Angeles 13, Calif.
“Dear Mr. Moore:
“I have received your letter of March 2nd and I have paid the bill of $16.00 to the Eeporter.
“I assume that you overlooked that part of our agreement which specifically stipulates that the agreed fees cover and include all the appeals. I would appreciate it if you would let me know your considered opinion about this matter.
‘ ‘ Whatever the court costs will be we will make payments upon receipt of the bills to the court Eeporter as in the past.
“Cordially yours,
Leopold Fellner ’ ’

“March 10, 1954
“Mr. Leopold Fellner
9970 West Pico Blvd.
Los Angeles, California
‘ ‘ Dear Mr. Fellner:
“I am at a loss to understand the position taken in your letter of March 3rd inasmuch as during the negotiations which we had leading to the making of our agreement with respect to the fees of this office, it was clearly understood to be through proceedings in the Superior Court.
“As you may recall, you pointed out at the time you corrected the letter which we had prepared for your signature on May 25, 1951, [altered by your letter of May 29, 1951) that what you wanted clearly understood was, regardless of the outcome of the proceedings in the Superior Court, you wanted to have the opportunity of choosing other counsel if you saw fit after the termination of the litigation in the Superior Court.
“As you well know, we at no time ever made any agreement that presupposed the carrying of your litigation beyond the Superior Court under the contingent fee arrangement of twenty-five per cent of the recovery from Morris Steinbaum any more than it would be assumed that we would carry an appeal in the event the litigation was lost in the trial court, through the state appellate courts and possibly the Supreme Cour of the United States, without any compensation. Tour only request was that you be allowed the opportunity of changing counsel after the determination of the proceedings in the trial court.
“In accordance with that understanding we wrote you on the 2nd, due to the imminence of the appeal, to advise you that it was still satisfactory with this office for you to choose any counsel for the purpose of defending your rights on appeal; that should you care to have this office represent you in the appeal, that our fee would be $2,000.00 in addition to any costs on appeal.
“As you may recall, you asked for and were given the balance of costs that had been deposited in connection with the trial litigation after the judgment had been entered. We received notice that the next amount *337 due is §25.80, payable to the County Clerk for preparation of the Clerk’s Transcript on Appeal, which must be paid by March 14th.
“Respectfully,
Moore, Webster, Lindelof & Hughes Prentiss Moore”

 ‘‘March 13,1954
“Messrs. Moore, Webster, Lindelof & Hughes
417 South Hill Street
Los Angeles 13, California
‘ ‘ Dear Mr. Moore:
“I have received your letter of March 10th. The reading of it was quite a shocking experience to us. As I outlined in my letter of March 3rd we were confident that you overlooked the terms of our agreement and that your considered opinion, based on the terms of the contract, would not differ from ours.
“Your statements and implications are false and designed to distort the issues. We never considered and negotiated about anything else but a contingency fee which would cover the litigation to the final satisfaction of our claim, and, if necessary, at our option, any litigation to the highest court. The purpose of a contingency arrangement had no other purpose for us but to assure ourselves against payments of attorneys’ fees which would be difficult for us to handle. We emphasized this in our agreement by saying: ‘of any amount recovered from Morris Steinbaum.’ As if this would not be enough, we emphasized it again: ‘it is understood that this agreement covers our understanding to the conclusion of these two eases in the Superior Court and, at our option, in any of the highest courts. ’
“I do not understand what bearing our right to change counsel would have on this matter, still I wish to state the facts as they are. When I asked you during our negotiations what the purpose of a retainer fee was, when there is a contingency fee arrangement, you explained that this was just something like earnest money in ease I would change counsel and there was never any suggestion on my part that I would consider this possibility.
“You used the fact that I picked up the balance of our deposit with you to distort the issues. You know well what happened. When we had to pay, without prior notice from you, over §1,500 to the Court Reporter and Appraiser, I told you that it was very difficult for us to raise this money on such a short notice. Then I suggested that, as we were paying the bills direct to the Court Reporter, and other expenses, it would not serve any purpose to have a deposit lying around in your office.
“We cannot see any possibility of a misunderstanding on your part. We cannot look at it in any other way but that you tried to take advantage of our position. This, of course, has disrupted and destroyed any relationship of confidence between us. We must consider that you have deliberately breached our agreement of May 29th, 1951. For that reason 1) we consider your relationship as our attorney terminated by your conduct and we will seek other counsel to represent us in this litigation. 2) The agreement of May 29th, 1951, between us has been terminated by you and we must accept the termination of the contract and act accordingly.
‘ ‘ Our new counsel will contact you as soon as possible. He will conduct any necessary negotiations with you m our behalf.
“Yours very truly,
Leopold Fellner”

"March 19,1954
"Mr. Leopold Fellner
9970 West Pico Blvd.
Los Angeles, California
"Dear Mr. Fellner:
‘ ‘ I have your letter of March 13th. Of course, most of the statements you make in your letter as to facts are unfounded. There is no attempt by me to breach our agreement of May 29th as you state. In writing you I was merely endeavoring to clarify my position so far as the appeal of your case was concerned.
"From your correspondence, I can only conclude that you are exercising your option to employ other counsel for the appeal, and that the fee arrangement is still in effect. According, I will expect payment of twenty-five per cent of all funds received from Morris Steinbaum.
"Respectfully,
Prentiss Moore"

"June 30,1954
"Mr. and Mrs. Leopold Fellner
9970 West Pico Blvd.
Los Angeles, California
"Dear Mr. and Mrs. Fellner:
“By your action in securing an order of court June 22, 1954, substituting Sidney Dorfman as your attorney in place of myself in the case of Fellner vs. Steinbaum, you have made it impossible for me to complete the performance of my part of any agreement that we had regarding your representation in that case. Tour discharge of me was without cause and was wrongful. I hereby elect to treat the contract of my employment as your attorney in that matter as rescinded and will shortly commence an action for the determination of the reasonable value of my services to date. In this action you will receive credit for the $500.00 retainer that you gave me at the time the representation first arose.
"I am sending a copy of this letter to Mr. Sidney Dorfman for his information.
"Tours truly,
Prentiss Moore
CC: Mr. Sidney Dorfman
10332 La Grange Avenue
Los Angeles 25
California"

It may be noted that plaintiff by his pleadings has sought recovery only in quantum meruit, and has not sued for the contract fee.