[L.A. No. 29876. In Bank. Mar. 10, 1972.]

GEORGE FRACASSE, Plaintiff and Appellant, v.
RAY RAKA BRENT, Defendant and Respondent.

## COUNSEL

Freeman & Freeman, Lee A. Freeman and Lawrence P. Freeman for Plaintiff and Appellant.

Mour, Klein & Aronson and Robert A. Klein as Amici Curiae on behalf of Plaintiff and Appellant.

Richard T. Kayaian for Defendant and Respondent.

## OPINION

**BURKE, J.**—In this case we are asked to reconsider the rule of damages which allows an attorney who has been discharged without cause by his client to recover as damages the full fee specified in the contract of employment, regardless of the reasonable value of his services or the extent of work performed under that contract. For the reasons hereinafter stated, we have concluded that this rule is inconsistent with the strong policy, expressed both judicially and legislatively, in favor of the client's absolute right to discharge his attorney at any time, and that the attorney should be limited to a *quantum meruit* recovery for the reasonable value of his services, upon the occurrence of any contingency contemplated by his contract.

Plaintiff, George Fracasse, is a duly licensed attorney at law, who was retained by defendant Ray Raka Brent to prosecute a claim for personal injuries in her behalf. On or about March 12, 1969, Fracasse and Brent entered into a written contingency fee agreement, under which Brent agreed that Fracasse's compensation would be 33⅓ percent of any settlement made at least 30 days prior to the original trial date and 40 percent of any recovery obtained thereafter, whether by settlement or judgment.

Some time thereafter, but before any recovery had been obtained in the personal injury suit, Brent informed Fracasse that she wished to discharge him and retain another attorney. She did so and, on January 16, 1970, Fracasse filed the instant action, entitled "Complaint for Declaratory Relief." Alleging that his discharge was without cause, and that Brent had breached her contract and had refused to give Fracasse the fee to which

he would have been entitled thereunder, Fracasse prayed for a declaration that the contract was valid and that he had a one-third interest in any monies ultimately recovered in the personal injury action. Brent demurred generally and specially to the complaint. The trial court did not rule on the special demurrers, but held that the complaint did not state a cause of action and sustained the general demurrer without leave to amend on the authority of *Brown* v. *Connolly,* 2 Cal.App.3d 867 [83 Cal.Rptr. 158]. This appeal followed.

In *Brown* v. *Connolly, supra,* an attorney (Brown) was employed under a contingent fee contract which provided that he would be entitled to 25 percent of any recovery in certain litigation to be prosecuted by him. Brown filed a complaint on behalf of his client (Connolly) which prayed for $4,500,000 in damages. After his discharge by Connolly Brown filed an action against him for breach of contract, praying for $1,125,000 in damages—i.e., 25 percent of the recovery which Connolly had sought in the collateral litigation. Since Brown's complaint indicated, however, that Connolly had not yet recovered anything in that litigation, the trial court sustained a demurrer without leave to amend; the Court of Appeal affirmed on the basis that a wrongfully discharged attorney has no cause of action against his former client *for compensation,* based on a contingent fee contract, until the happening of the stated contingency.

As the *Brown* court noted, the rationale of such a rule is obvious. "[M]ore often than not the size of a party's claim bears little relation to its value. Such a rule . . . allowing judgment for attorney fees based upon a percentage of a wishful estimate (often by the attorney) of a client's claim before its liquidation or any recovery thereon, would often lead to grossly unfair consequences. A client, unfortunate enough to have misconceived a reason to discharge his attorney, without any recovery on his claim could find himself adjudged to pay many times its value—a disaster to the client and a windfall to the attorney." (*Brown* v. *Connolly, supra,* 2 Cal.App.3d 867, 870-871.)[1]

As was emphasized above, the *Brown* court was dealing with a situation in which the attorney was suing for compensation prior to the happening of the contingency, i.e., prior to any recovery by the client. Plaintiff would distinguish *Brown* on the basis that he is merely seeking a declaration of his rights in any recovery which his former client ultimately might receive. Defendant on the other hand contends that because plaintiff would be entitled to no compensation whatever unless and until defendant recovered

---

[1]The court in *Brown* assumed, contrary to our holding herein, that upon the occurrence of the contingency, attorney Brown could recover the *entire* contingent fee set forth in the contract, if he proved that he was wrongfully discharged.

something by way of judgment or settlement, the action is premature. More importantly, defendant argues that it is grossly unfair to allow a discharged attorney to put a former client to the expense of defending a suit, the result of which can put the attorney in no better position than he was initially and the purpose of which is likely to be to force an unfair settlement. Without attempting to judge the motives underlying the bringing of the instant action, and while recognizing the factual distinction between *Brown* and the instant situation, we shall point out that in light of our holding regarding the applicable measure of damages, the action is premature and, on that basis, the judgment must be affirmed.

Turning then to the question of damages we note that the rule respecting the measure of damages to be awarded a wrongfully discharge attorney derives from the 1854 case of *Baldwin* v. *Bennett,* 4 Cal. 392. In that case, an attorney was retained to litigate a matter and, by contract, the client had agreed to a $5,000 fee. The client settled the matter himself and the attorney sued for his fee. In support of its holding that the attorney was entitled to the full amount of the fee, the court set forth the following rationale: "The general rule as to measure of damages . . . 'is not the whole price agreed to be paid, but the actual loss sustained, which will consist of the value of the services rendered and the damage sustained by the refusal to allow performance of the rest of the contract.' [Par.] To this rule there are, however, some exceptions. Where, from the nature of the contract, as in this case, no possible mode is left of ascertaining the damage, we will have presented the anomalous case of a wrong without a remedy, unless we adopt the only measure of damages which remains, and that is, the price agreed to be paid. . . ." (*Baldwin* v. *Bennett, supra,* at p. 393.)

Despite the court's faulty premise—there being no convincing reason why recovery on a *quantum meruit* theory would not fairly and adequately compensate the attorney for his services—*Baldwin* v. *Bennett, supra,* was cited as controlling in *Webb* v. *Trescony,* 76 Cal. 621 [18 P. 796]—another contractual fee case—with no discussion of alternative theories of recovery. *Bartlett* v. *Odd Fellows' Savings Bank,* 79 Cal. 218 [21 P. 743], appears to be the first case to apply the contract-price measure of recovery to a contingent fee contract. The court also held that a cause of action for wrongful discharge under a contingent fee contract accrues at the time of the happening of the contingency, not at the time of the discharge. The court affirmed the award of the stipulated fee without discussion of the basis for the rule, or citation of authority. The rule was reaffirmed in *Zurich G. A. & L. Ins. Co.* v. *Kinsler,* 12 Cal.2d 98, 100-101 [81 P.2d 913], in which the court held that "where, with respect to compensation for services thereafter to be performed, an attorney who was

employed under a contingent contract . . . was discharged '*without cause*' . . . he [is] entitled to recover a judgment for the full amount that was provided by the terms of such contract." (See also *Denio* v. *City of Huntington Beach,* 22 Cal.2d 580, 591 [140 P.2d 392, 149 A.L.R. 320]; *Jones* v. *Martin,* 41 Cal.2d 23, 27 [256 P.2d 905].)[2]

The rule was given substantial consideration in the case of *Salopek* v. *Schoemann,* 20 Cal.2d 150 [124 P.2d 21], an action to foreclose an attorney's lien on the proceeds of a judgment. The trial court allowed the lien to the extent of the reasonable value of the services, and this court affirmed, holding that the attorney was discharged *for cause* and, therefore, was entitled only to a *quantum meruit* recovery. Chief Justice Gibson and Justice Traynor concurred, but contended that the line of cases following *Baldwin* v. *Bennett, supra,* 4 Cal. 392, should be overruled and that whether the discharge was with or without cause, the measure of damages should be the reasonable value of the attorney's services. The concurring justices reasoned that "It is recognized as a part of the ethical rules governing the legal profession that an attorney will not sue a client for a fee except to prevent injustice, imposition or fraud. (See American Bar Association, Canons of Professional Ethics, Canon 14.) [Par.] The relation of attorney and client is one of special confidence and trust, and the dignity and integrity of the legal profession demand that the interests of the client be fully protected. [Citation.] Without public confidence in the members of the legal profession, which is dependent upon absolute fairness in the dealings between attorney and client, courts cannot function in the proper administration of justice. And inherent in the relationship between attorney and client is the fact that the client must rely almost entirely upon the good faith of the attorney who alone can make an informed estimate of the value of the client's legal right and of the expense and effort necessary to enforce it. These considerations have given rise to the generally accepted rule that a client may discharge his attorney at any time with or without cause. [Citations.] But that is not enough. The right to discharge is of little value if the client must risk paying the full contract price for services not rendered upon a determination by a court that the discharge was without legal cause. The client may frequently be forced to choose between continuing the employment of an attorney in whom he has lost faith, or risking the payment of double contingent fees equal to the greater portion of any amount eventually recovered. . . . The uncertain position of the client in such circumstances is illustrated by the record in the present case where the trial court found the discharge was without cause and this court

---

[2]It has also been held that the attorney may elect to sue in *quantum meruit* rather than sue for the fee contracted to be paid. (See *Echlin* v. *Superior Court,* 13 Cal.2d 368, 375-376 [90 P.2d 63, 124 A.L.R. 719].)

has made a contrary finding and concluded the discharge was justified. Unless a rule is adopted allowing an attorney as full compensation the reasonable value of services rendered to the time of discharge, clients will often feel required to continue in their service attorneys in whose integrity, judgment or capacity they have lost confidence." (*Salopek* v. *Schoemann, supra,* at pp. 156-157; see *Denio* v. *City of Huntington Beach, supra,* 22 Cal.2d 580, 603-604.)

█ It has long been recognized in this state that the client's power to discharge an attorney, with or without cause, is absolute (Code Civ. Proc., § 284). In discussing the unique relationship between attorney and client, this court stated that "The interest of the client in the successful prosecution or defense of the action is superior to that of the attorney, and he has the right to employ such attorney as will in his opinion best subserve his interest. The relation between them is such that the client is justified in seeking to dissolve that relation whenever he ceases to have absolute confidence in either the integrity or the judgment or the capacity of the attorney. . . . The fact that the attorney has rendered valuable services under his employment, or that the client is indebted to him therefor, or for moneys advanced in the prosecution or defense of the action, does not deprive the client of this right. . . ." (*Gage* v. *Atwater,* 136 Cal. 170, 172 [68 P. 581]; see *Herron* v. *State Farm Mutual Ins. Co.,* 56 Cal.2d 202, 205-206 [14 Cal.Rptr. 294, 363 P.2d 310].)

Upon reflection, we find this language irreconcilable with the rule of *Baldwin* v. *Bennett, supra,* 4 Cal. 392, and its progeny. It should be sufficient that the client has, for whatever reason, lost faith in the attorney, to establish "cause" for discharging him. Otherwise, a client may believe that he has legal cause for discharging an attorney, and subsequently discover that a trial court's contrary conclusion has cost him 73⅓ percent of a recovered judgment. (See *Jones* v. *Brown,* 84 Cal.App.2d 390 [190 P.2d 956].) As Witkin states the matter, "the client has the power to discharge his attorney at any time for no reason at all; the client may confuse this *power* with a *right to discharge without liability.* . . . [D]ischarge without cause may subject the client either to an essentially penal recovery not measured by the value received, or, in some cases, to double recovery of fees—by the new attorney and the discharged attorney. Consequently, it is of vital importance that the client know whether he has legal cause for terminating the contract, but the authorities furnish him with no reliable test." (1 Witkin, Cal. Procedure (2d ed. 1970) pp. 113-114.)

We have concluded that a client should have both the power and the right at any time to discharge his attorney with or without cause.

Such a discharge does not constitute a breach of contract for the reason that it is a basic term of the contract, implied by law into it by reason of the special relationship between the contracting parties, that the client may terminate that contract at will. It would be anomalous and unjust to hold the client liable in damages for exercising that basic implied right. (See *Martin* v. *Camp,* 219 N.Y. 170 [114 N.E. 46], setting forth the rationale for the New York rule.)

Amicus contends that there will be substantial difficulty in ascertaining the amount of recovery under a *quantum meruit* theory. The same difficulty—if such it be—is also present, however, in cases in which an attorney has been discharged with "cause" and yet such difficulty does not appear to have been insurmountable. (See 1 Witkin, Cal. Procedure, *supra,* pp. 98-109, and cases cited therein.) Nor do we believe that abandonment of the present rule will lead to a wholesale discharging of attorneys by clients motivated solely by a desire to save attorneys' fees. To the extent that such discharge is followed by the retention of another attorney, the client will in any event be required, out of any recovery, to pay the former attorney for the reasonable value of his services. Such payment, in addition to the fee charged by the second attorney, should certainly operate as a self-limiting factor on the number of attorneys so discharged. To the extent that such discharge occurs "on the courthouse steps," where the client executes a settlement obtained after much work by the attorney, the factors involved in a determination of reasonableness would certainly justify a finding that the entire fee was the reasonable value of the attorney's services. (*Oliver* v. *Campbell,* 43 Cal.2d 298 [273 P.2d 15]; see *Los Angeles* v. *Los Angeles-Inyo Farms Co.,* 134 Cal.App. 268, 276 [25 P.2d 224], setting forth the factors which should be taken into consideration in determining a reasonable fee.)

In short, we find no injustice in a rule awarding a discharged attorney the reasonable value of the services he has rendered up to the time of discharge.[3] In doing so, we preserve the client's right to discharge his attorney without undue restriction, and yet acknowledge the attorney's right to fair compensation for work performed.

We return, therefore, to the question of the timeliness of the action filed by plaintiff. It had been held that a claim based upon unlawful discharge of an attorney retained under a contingent fee contract did not accrue until the happening of the contingency. (*Brown* v. *Connolly, supra,* 2

[3]In passing, we note that a substantial number of jurisdictions, including New York, have adopted such a rule. (See Annot., 54 A.L.R.2d 604, 618-620; Annot., 136 A.L.R. 231, 254-258; 7 Am.Jur.2d, Attorneys at Law, §§ 255-256.)

Cal.App.3d 867; *Barlett* v. *Odd Fellows' Savings Bank, supra,* 79 Cal. 218, *Jones* v. *Martin, supra,* 41 Cal.2d 23.) The basis for the rule was, of course, the fact that until the happening of the contingency, the amount of damages suffered by the attorney could not be ascertained. Having held herein that an attorney henceforth will be entitled to recover only the reasonable value of his services to the time of discharge, the question arises whether his cause of action has accrued at that time. With respect to contingent fee contracts, we hold otherwise for two reasons.

■ First, one of the significant factors in determining the reasonableness of an attorney's fee is "the amount involved and the result obtained." (1 Witkin, Cal. Procedure, *supra,* p. 102, citing A.B.A. Code, DR 2-106(B).) It is apparent that any determination of the "result obtained" is impossible, and any determination of the "amount involved" is, at best, highly speculative (see *Brown* v. *Connolly, supra,* 2 Cal.App.3d 867), until the matter has finally been resolved. Second, and perhaps more significantly, we believe it would be improper to burden the client with an absolute obligation to pay his former attorney regardless of the outcome of the litigation. The client may and often is very likely to be a person of limited means for whom the contingent fee arrangement offers the only realistic hope of establishing a legal claim. Having determined that he no longer has the trust and confidence in his attorney necessary to sustain that unique relationship, he should not be held to have incurred an absolute obligation to compensate his former attorney. Rather, since the attorney agreed initially to take his chances on recovering any fee whatever, we believe that the fact that the success of the litigation is no longer under his control is insufficient to justify imposing a new and more onerous burden on the client. Hence, we believe that the attorney's action for reasonable compensation accrues only when the contingency stated in the original agreement has occurred—i.e., the client has had a recovery by settlement or judgment. It follows that the attorney will be denied compensation in the event such recovery is not obtained.[4]

■ In summary, we hold that an attorney discharged with or without cause is entitled to recover the reasonable value of his services rendered to the time of discharge. Cases to the contrary, commencing with *Baldwin* v. *Bennett, supra,* 4 Cal. 392, are overruled. ■ We further hold that the cause of action to recover compensation for services rendered under a contingent fee contract does not accrue until the occurrence of the stated contingency. ■ In light of these rules, it seems clear that there is no present controversy such as would justify the court in exercising its dis-

---

[4]To the extent that *Tracy* v. *MacIntyre,* 29 Cal.App.2d 145 [84 P.2d 526], is inconsistent with the views expressed herein, that case is disapproved.

cretion to entertain an action for declaratory relief (Code Civ. Proc., § 1060 et seq.). Whether there might be some circumstances in which a declaratory relief action might properly be brought by an attorney we need not decide. (See *Merkley* v. *Merkley,* 12 Cal.2d 543 [86 P.2d 89].) The facts presented in the instant case cannot support such an action.

The judgment of the trial court is affirmed.

McComb, J., Peters, J., Tobriner, J., and Mosk, J., concurred.

**SULLIVAN, J.**—I dissent.

We are confronted here with two questions: First, whether an attorney at law who has been discharged without cause by his client may bring a declaratory relief action to obtain a determination of his rights under a written contingency fee contract; and second, what may be the extent of his recovery under such circumstances.

The majority hold (1) that the action for declaratory relief is premature because the amount of any possible award cannot be determined before disposition of the client's underlying claim; and (2) that the client's discharge of the attorney without cause does not constitute a breach of the contingency fee contract so as to make the client liable for damages on the contract because he has "both the power and the right at any time to discharge his attorney with or without cause." (*Ante,* p. 790.) Neither logic, traditional principles of contract law, nor the weight of precedent supports either holding.

I

On the first question, the majority refer extensively to *Brown* v. *Connolly* (1969) 2 Cal.App.3d 867 [83 Cal.Rptr. 158]. In *Brown,* the discharged attorney brought *an action for damages for breach* of a written contingency fee contract, seeking a sum calculated by applying the agreed percentage of the contingency fee to the amount of recovery prayed for by the client in the latter's personal injury action. The court held that since the attorney's damages could not be assessed until his former client recovered a specific amount, the attorney's action was premature.

As the majority concede, the present case is factually distinguishable from *Brown.* Here, plaintiff is not seeking damages for breach, but merely a *declaratory judgment* determining that defendant is *conditionally* liable under the contract and applying the established rule for calculating the amount of liablity. Unlike *Brown,* the relief sought here by plaintiff does not require the court to predict whether and to what extent defendant will recover in his underlying personal injury suit. Rather, plaintiff prays

only for the court's recognition of his contractual right to receive a fixed percentage of any amount eventually recovered by defendant. It is clear then, that *Brown* v. *Connolly, supra,* is not controlling.

The present case is governed by the principles set forth in *Sattinger* v. *Newbauer* (1954) 123 Cal.App.2d 365 [266 P.2d 586]. There Sattinger sued Newbauer and Codd individually and as partners on a contract entered into by Codd on behalf of the partnership. Newbauer filed a cross-complaint against Codd seeking a declaratory judgment determining whether Codd had in fact entered into the contract on behalf of the partnership and declaring that if liability existed it was not within the scope of an agreement made dissolving the partnership. The court reversed a judgment for Codd entered on an order sustaining his demurrer, stating: "The fact that no judgment has been rendered against Newbauer in favor of Sattinger furnishes no reason for denying the former equitable relief under the declaratory relief procedure. The very purpose of that procedure, if given effect here, would enable Newbauer to obtain a declaration as to the obligation of Codd to him, if any, with respect to the Sattinger claim, *before the merits of that claim had been adjudicated.* To deny him that right would be to relegate him to the redress that would have been available to him before the declaratory relief procedure was adopted." (Italics added.) (*Sattinger* v. *Newbauer, supra,* 123 Cal.App.2d at p. 367; see also *Rimington* v. *General Accident Group of Ins. Cos.* (1962) 205 Cal. App.2d 394, 397-398 [23 Cal.Rptr. 40]; *London Assurance Co.* v. *Anderson* (1961) 194 Cal.App.2d 418, 422 [15 Cal.Rptr. 13].)

In short, the fact that no judgment had been rendered in favor of Sattinger for recovery on the underlying action for breach of contract did not of itself preclude declaratory relief to determine the rights and obligations of the partner's *inter se* in the event one should be rendered. Similarly, in the case before us, the fact that no judgment has been rendered in favor of defendant for recovery in his underlying action for damages for personal injuries does not of itself preclude declaratory relief to determine the rights of plaintiff and defendant *inter se* in the event defendant should obtain one. Just as in *Sattinger,* such a determination would have become unnecessary if Sattinger had not recovered; so here, it will meet the same fate if defendant is unsuccessful. The *Sattinger* court reasoned that, despite the possibility of a declaratory judgment becoming moot, recognition of the party's right to receive a declaration of rights pursuant to Code of Civil Procedure sections 1060-1062a was necessary to preserve the declaratory judgment as a viable concept. For the same reason, plaintiff here is entitled to declaratory relief, and the trial court could not properly refuse to assume jurisdiction. (See *Columbia Pictures Corp.* v. *DeToth* (1945) 26 Cal.2d 753, 762 [161 P.2d 217, 162 A.L.R. 747].)

This conclusion does not mean that the court below must try the declaratory relief action before trial or compromise settlement of defendant's personal injury action. The trial court may discover substantial reasons for postponing the declaratory relief action. But as the Court of Appeal observed, the trial court by dismissing this action on demurrer "has deprived itself of all options to meet future contingencies" and has placed plaintiff in the position of having "to file a new complaint every few months to find out whether or not it is then convenient to keep his case on the docket."

Despite these clear governing principles and the obvious inapplicability of *Brown* v. *Connolly, supra,* 2 Cal.App.3d 867, the majority insist that an attorney may not bring an action to determine his rights under a breached contingent fee contract until the happening of the contingency. The gist of their argument is that "it would be improper to burden the client with an absolute obligation to pay his former attorney regardless of the outcome of the litigation." (*Ante,* p. 792.) This position ignores the provision in *Sattinger* for a conditional determination of rights. Moreover, the argument is addressed to the likelihood that an action for declaratory relief will result in immediate success for the plaintiff, not to the propriety of the declaratory action itself. In order to present a proper case for declaratory relief, a plaintiff need *not* establish his right to a favorable declaration. (*Columbia Pictures Corp.* v. *DeToth, supra,* 26 Cal.2d 753, 760.) He need only show the "existence of an actual controversy relating to the legal rights and duties of the respective parties under a contract . . . ." (*Id.*)

Plaintiff in the present case has shown that an actual controversy exists. The discharged attorney obviously desires to secure a conditional determination of his right to recover his fee before the trial or settlement of the personal injury action so that he can reach any proceeds before his former client disposes of them. If, as the majority assert, contingent fee contracts frequently involve clients of limited means,[1] prompt establishment of an interest in a portion of the proceeds may therefore be essential to recovery. The attorney who eventually brings the personal injury action to judgment or settlement may have the first opportunity to resort to the proceeds. The attorney who is discharged without cause should certainly receive comparable protection. I can only conclude that the majority's rationale that a client should not be burdened with an absolute obligation to pay his former attorney is misleading and irrelevant.

As an auxiliary rationale for withholding declaratory relief, the majority

---

[1] It is noteworthy that in a time when virtually all personal injury cases are accepted on a contingent fee basis, both rich and poor clients do enter into contingent fee contracts with attorneys. (See *Echlin* v. *Superior Court* (1939) 13 Cal.2d 368, 375 [90 P.2d 63, 124 A.L.R. 719].)

argue that a court cannot determine a reasonable amount of attorney's fees until it knows "the amount involved and the results obtained" in the underlying personal injury suit. I find the argument unconvincing for two reasons. Initially, plaintiff here seeks only a declaration of his rights. After the trial court announces the governing rules of law applicable to the case, the court can postpone calculation of any possible damages until more information is secured. In addition, the basic premise of the majority's analysis is incorrect: damages should be measured by the terms of the contract, not by the reasonable value of the attorney's services.

The foregoing reasons make it clear that since plaintiff's action was supported by sound precedent and was not premature, the trial court erred in sustaining the demurrer.

## II

The majority, however, do not stop at this point but, fashioning new rules as to the measure of damages in respect to attorney-client contracts, conclude that the action should be dismissed on this basis also. I cannot accept these new rules which are arrived at only after a wholesale uprooting of settled principles of contract law and an omnibus overturning of precedent. I now turn to this aspect of the case.

I start with an established rule of general contract law long recognized and adhered to by California courts. "One who has been injured by a breach of contract has an election to pursue any of three remedies. He may treat the contract as rescinded and may recover upon a *quantum meruit* so far as he has performed; or he may keep the contract alive, for the benefit of both parties, being at all times ready and able to perform; or, third, he may treat the repudiation as putting an end to the contract for all purposes of performance, and sue for the profits he would have realized if he had not been prevented from performing." (*McConnell* v. *Corona City Water Co.* (1906) 149 Cal. 60, 64-65 [85 P. 929].) (See *Oliver* v. *Campbell* (1954) 43 Cal.2d 298, 302 [273 P.2d 15]; *Alder* v. *Drudis* (1947) 30 Cal.2d 372, 381-382 [182 P.2d 195]; Rest., Contracts, §§ 326, 327, 347.) This rule applies as to contracts between principal and agent and to contracts for services. (*Oliver* v. *Campbell, supra;* Rest.2d Agency, § 455; 11 Williston on Contracts (3d ed.) § 1358, § 1459 (vol. 12).) Until today there has been nothing in the development of California law which has qualified or restricted the above rule when applied to agreements between an attorney and his client. Although such contracts are subject to the usual precepts governing persons standing in a confidential relationship, no statute, decision or rule of professional conduct has declared that they are not subject to general contract law. No authority has ever so jettisoned respected contract principles to decree, as do the majority today,

that a solemn, valid agreement between attorney and client may be dissolved into thin air at the mere whim of the client.

For well over a century it has been the settled rule in California that when an attorney is wrongfully discharged by his client before he has completely performed his contract, he may recover from the client damages for breach, the measure of the damages being the fee specified in the contract, or he may recover on a *quantum meruit* for the reasonable value of his services.[2] This has been the rule whether the attorney's contract is for a fixed fee or is a contract where the amount of the fee, the liability therefor, or both, are contingent. This rule has the support of the weight of authority outside California[3] and is recognized by respected commentators and treatise writers.[4]

[2]*Herron* v. *State Farm Mutual Ins. Co.* (1961) 56 Cal.2d 202, 205, 207 [14 Cal. Rptr. 294, 363 P.2d 310]; *Moore* v. *Fellner* (1958) 50 Cal.2d 330, 343 [325 P.2d 857]; *Oliver* v. *Campbell* (1954) 43 Cal.2d 298, 305 [273 P.2d 15]; *Jones* v. *Martin* (1953) 41 Cal.2d 23, 27 [256 P.2d 905]; *Denio* v. *Huntington Beach* (1943) 22 Cal.2d 580, 591 [140 P.2d 392, 149 A.L.R. 320]; *Salopek* v. *Schoemann* (1942) 20 Cal.2d 150, 153 [124 P.2d 21]; *Echlin* v. *Superior Court* (1939) 13 Cal.2d 368, 375 [90 P.2d 63, 124 A.L.R. 719]; *Zurich G. A. & L. Ins. Co., Ltd.* v. *Kinsler* (1938) 12 Cal.2d 98, 100-101 [81 P.2d 913]; *Elconin* v. *Yalin* (1929) 208 Cal. 546, 549 [282 P. 791]; *Kirk* v. *Culley* (1927) 202 Cal. 501, 506 [261 P.2d 994]; *Bartlett* v. *Odd Fellows' Savings Bank* (1889) 79 Cal. 218, 222 [21 P. 743]; *Webb* v. *Trescony* (1888) 76 Cal. 621, 622-623 [18 P. 796]; *Baldwin* v. *Bennett* (1854) 4 Cal. 392, 393-394; *Brown* v. *Connolly* (1969) 2 Cal.App.3d 867, 870 [83 Cal.Rptr. 158]; *Brown* v. *Superior Court* (1966) 242 Cal.App.2d 519, 524-525 [51 Cal.Rptr. 633]; *Fivey* v. *Chambers* (1962) 199 Cal.App.2d 457, 463-464 [19 Cal.Rptr. 111]; *Hendricks* v. *Sefton* (1960) 180 Cal.App.2d 526, 532 [4 Cal.Rptr. 218]; *Estate of Raphael* (1951) 103 Cal.App.2d 792, 797-798 [230 P.2d 436]; *Jones* v. *Brown* (1948) 84 Cal.App.2d 390, 393 [190 P.2d 956]; *McCully* v. *Gano* (1931) 116 Cal.App. 695, 698-699 [3 P.2d 348]; *Countryman* v. *California Trona Co.* (1917) 35 Cal.App. 728, 736 [170 P. 1069]. See generally 6 Cal.Jur.2d, Attorneys at Law, sections 118-119, pages 194-195; Basic California Practice Handbook (Cont. Ed. Bar 1959) page 35.

[3]*Batter* v. *Williams* (5th Cir. 1963) 316 F.2d 540, 540-541 [fixed fee only]; *Kikuchi* v. *Ritchie* (9th Cir. 1913) 202 F. 857, 859; *Bockman* v. *Rorex* (1948) 212 Ark. 948 [208 S.W.2d 991, 995]; *Cypen, Salmon & Cypen* v. *Chaachou* (Fla. 1961) 130 So.2d 885, 886; *Warner* v. *Basten* (1969) 118 Ill.App.2d 419 [255 N.E.2d 72, 80]; *French* v. *Cunningham* (1898) 149 Ind. 632 [49 N.E. 797, 799]; *Sowers* v. *Robertson* (1936) 144 Kan. 273 [58 P.2d 1105, 1107]; *United Gas Public Service Co.* v. *Christian* (1937) 186 La. 689 [173 So. 174, 176]; *Philbrook* v. *Moxey* (1906) 191 Mass. 33 [77 N.E. 520, 521-522]; *Neeper* v. *Heinbach* (Mo.App. 1923) 249 S.W. 440, 441; *Dorshimer* v. *Herndon* (1915) 98 Neb. 421 [153 N.W. 496, 497]; *Higgins* v. *Beaty* (1955) 242 N.C. 479 [88 S.E.2d 80, 82-83, 54 A.L.R.2d 600]; *Bolton* v. *Marshall* (1950) 153 Ohio St. 250 [41 Ohio Ops. 270, 91 N.E.2d 508, 511]; *Mount* v. *Schulte* (1943) 193 Okla. 335 [143 P.2d 424, 427]; *Dolph* v. *Speckart* (1920) 94 Ore. 550 [186 P. 32, 35]; *Kent* v. *Fishblate* (1915) 247 Pa. 361 [93 A. 509, 511]; *Bonham* v. *Farmer* (1929) 151 S.C. 246 [148 S.E. 878]; *Brownlow* v. *Payne* (1925) 2 Tenn. App. 154, 162; *Mandell & Wright* v. *Thomas* (Tex. 1969) 441 S.W.2d 841, 847; *Tonn* v. *Reuter* (1959) 6 Wis.2d 498 [95 N.W.2d 261, 265]. (See generally 136 A.L.R. 245-251; 54 A.L.R.2d 611-615; 7 C.J.S., Attorney and Client, § 169, p. 1027; et seq., 7 Am.Jur.2d, Attorneys at Law, §§ 256-257, pp. 190-192.)

[4]1 Witkin, California Procedure (2d ed. 1970) sections 104-105, pages 114-115;

By their decision today, the majority repudiate a rule supported by an impressive array of authority and replace it with one which will reduce an attorney-client contract to a hollow and meaningless act. The majority opinion eschews any in-depth analysis of the mass of precedent which it thus rejects. An attempt is made to find justification for upsetting the former rule by (1) asserting that *Baldwin* v. *Bennett* (1854) 4 Cal. 392, the first of the long line of California cases applying the rule, contained a "faulty premise" (*ante*, p. 788) and (2) that certain language of this court in *Gage* v. *Atwater* (1902) 136 Cal. 170 [68 P. 581] is "irreconcilable with the rule of *Baldwin* v. *Bennett* . . . and its progeny." (*Ante*, p. 790.) If these points of criticism had any validity, they would still fall far short of providing an adequate ground for eradicating a full line of precedent. The fact, as will appear, that they lack substance indicates that they do not support the majority's holding.

In the first place, even if *Baldwin* had the congenital defect of which the majority complain, it was soon overcome by a healthy body of law on the point. *Baldwin*, even if disavowed, would not cause the long line of authority to topple domino-like; subsequent cases reconsidered and confirmed the rule. Indeed the majority make no direct attack on them.

In the second place, a close examination of *Baldwin* fails to reveal any fatal defect supportive of the majority's holding. In that case the plaintiff-attorney sued on an express contract to pay a fixed fee for legal services. Before he could complete them, the defendant-client settled the case and discharged him. The attorney claimed he was entitled to the full fee set forth in the contract; the client contended that he was entitled to recover only what the services were worth, without regard to the contract. Acknowledging that under the general rule in an action for breach of contract, the measure of damages was the actual loss sustained rather than the whole price agreed to be paid, the court said: "To this rule there are, however, some exceptions. Where, from the nature of the contract, (as in this case,) no possible mode is left of ascertaining the damage, we will have presented the anomalous case of a wrong without a remedy, unless we adopt the only measure of damages which remains, and that is, the price agreed to be paid. Without this, justice would be defeated, and parties encouraged to violate their contracts of similar character. The defendant not only breaks his contract, but also deprives the party of showing the amount of injury under the general rule." (*Baldwin* v. *Bennett, supra,* 4 Cal. 392, 393-394.)

---

10 Williston on Contracts (3d ed.) section 1285A, page 935; 5 Corbin on Contracts (1964) section 1095, pages 520-521.

The majority deprecate *Baldwin* for its alleged "faulty premise—there being no convincing reason why recovery on a *quantum meruit* theory would not fairly and adequately compensate the attorney for his services . . . ." (*Ante*, p. 788.) Indeed, the *Baldwin* court did find "convincing reason" for their holding in the cited case of *Hunt* v. *Test* (1845) 8 Ala. 713, a case precisely similar to the one before them.

In *Hunt*, the plaintiff-attorney was employed to render specified legal services for a fixed fee plus a bonus if he obtained a certain result. While he was performing the services, the defendant-client settled the dispute and terminated his employment. The plaintiff sued for the amount he would have received had he procured the result. Although disposition of the case turned on another issue, the court said, "It is certainly clear law . . . that an offer to perform or do an act, which is prevented by the party in whose favor it is to be done, or performed, is, in law, equivalent to a performance, or rather is a valid excuse for not performing it. . . . [I]t is apparent, that the plaintiff cannot prove that he could certainly have procured this result, . . . [Par.] Nor can the defendant object, that the plaintiff does not prove unequivocally, that he could have performed his contract, when the inability to make such proof is caused by his own act." (At pp. 722-723.)

It is convenient to observe at this point that where the fee arrangement between attorney and client is on a contingency basis, *quantum meruit* is an inherently imprecise and inadequate basis for determining compensation. In many instances, the most valuable and difficult services are rendered by the attorney in the early stages of his employment in advising the client of his legal rights; in investigating the case, interviewing witnesses and initiating other preparatory procedures; and in making basic decisions as to strategy and tactics. Where the attorney is then discharged without cause, these services are frequently imponderable elements in any equation for determining his loss, their resultant product is frequently an intangible one, and their value can only be guessed at by a court. (See *Bockman* v. *Rorex, supra,* 212 Ark. 948 [208 S.W.2d 991, 995]; *Kikuchi* v. *Ritchie, supra,* 202 F. 857, 859.) An attorney who is discharged for "cause" cannot reasonably complain about having his fees determined in this manner, but an attorney who is blameless should not in all fairness be relegated to such an uncertain recovery.

It is not surprising, therefore, that 35 years after *Baldwin* this court, in *Bartlett* v. *Odd Fellows' Savings Bank* (1889) 79 Cal. 218 [21 P. 743], again reached the same conclusion as in *Baldwin,* and after a fresh consideration of the problem, confirmed what has been the settled California

rule, without citing *Baldwin*. The court said that if "employment is voluntarily tendered to [an attorney] by those competent to contract with him, with a full knowledge of their right, and of the circumstances under which they are acting, we do not perceive anything improper in it. [Par.] . . . [The attorney] did not misstate any facts, or mislead the defendant. The contract was entered into with a true appreciation of the situation surrounding the transaction, and was in no sense unfair. [Par.] To us it seems as if the plaintiff was discharged without cause, and did not forfeit any of his rights. [Par.] . . . If the defendant, by its wrongful conduct, prevents the performance of acts which entitle a party to a specific recompense . . . such amount . . . may be recovered in an action which sets forth such . . . facts." (At pp. 221-222.)

As previously indicated, *Bartlett* was to assume a front position in the long line of California decisions to follow. (See fn. 2, *ante*.) In view of the foregoing, and with all due respect to my colleagues of the majority, I cannot see how their criticism of *Baldwin* has any validity.

I turn, therefore, to the second reason given by the majority for its holding—certain "irreconcilable" language used by this court 70 years ago in *Gage* v. *Atwater, supra,* 136 Cal. 170. I would expect in such event that, first, *Gage* was on point and second, that its *ratio decidendi,* quite apart from hapless dictum, disclosed such an unequivocal and fatal discordance between that case and the California decisions before and after it or such a penetrating insight into an egregious error in their holdings heretofore never discovered, as to call for their prompt and complete repudiation. Nothing of the sort exists.

In *Gage,* the defendant Atwater hired attorney Houghton to represent him in an action of ejectment brought by Gage. Houghton was to be compensated only if the litigation was ulitmately successful. After the trial court rendered judgment in favor of Gage, Atwater moved the court for an order authorizing substitution of attorneys. On appeal, this court affirmed and, referring to section 284 of the Code of Civil Procedure governing change of attorney (as it does now), stated: "Whatever may have been the rule in other jurisdictions, the rule must be considered as settled in this state, under the above provision of the code [Code Civ. Proc., § 284], that in the absence of any relation of the attorney to the subject-matter of the action, other than that arising from his employment, the client has the absolute right to change his attorney at any stage in the action. The interest of the client in the successful prosecution or defense of the action is superior to that of the attorney, and he has the right to employ such attorney as will in his opinion best subserve his interest. The relation between them is such that the client is justified in seeking to dissolve that relation whenever he ceases to have absolute confidence in either the

integrity or the judgment or the capacity of the attorney. [Citations.]" (*Gage* v. *Atwater, supra,* 136 Cal. 170, 172.)

It is obvious, of course, that the court's use of the word "right" is only in the context of a section 284 substitution and not in the context of a contract dispute. Perhaps the court could have used the more precise term of "power" as distinguished from "right," but in any event a reading of *Gage* makes clear that the court did not deal with the issue now before us and gave no indication that it was changing what was by that time a settled rule for measure of damages in attorney-client situations. *Gage* was concerned only with a client's ability to remove his attorney under section 284; it did not in any way involve an issue of attorney fees. The court resolved the only issue presented by declaring that the facts were "insufficient to justify the court in refusing to grant the motion of Atwater [the client]." (136 Cal. at p. 173.) To elucidate its conclusion, the court explained that the facts "at most constitute no more than a liability on the part of Atwater for his indebtedness by virtue of his contract with [the attorney], or a liability for an *unauthorized discharge* of Mr. Houghton as his attorney, by *which he may have been prevented from earning the compensation agreed upon.*" (*Id.*; italics added.)

An examination of *Gage,* therefore, leads to two ineluctable conclusions, both unfavorable to the majority: First, *Gage* is not on point at all and in fact contains language consistent with the California rule under attack. (See 136 Cal. at p. 173, quoted *supra.*) Second, the majority in articulating their new rule appear nevertheless to have borrowed from *Gage,* even though not on point, their central idea that "It should be sufficient that the client has, for whatever reason, *lost faith* in the attorney to establish 'cause' for discharging him." (*Ante,* p. 790; italics added.)[5]

In adition to *Gage,* the majority appear to rely on *Herron* v. *State Farm Mutual Ins. Co.* (1961) 56 Cal.2d 202 [14 Cal.Rptr. 294, 363 P.2d 310]. *Herron* clearly provides no support for their position. There, in an action for intentional interference with the contractual relations between an attorney and his client, this court, speaking of an attorney's contingent fee contract, said: "Such an agreement is a legal and valid contract entitled to the protection of the law, and an attorney who is wrongfully discharged *is generally entitled to the same amount of compensation as if he had completed the contemplated services. (Jones* v. *Martin,* 41 Cal.2d 23, 27 [256 P.2d 905].) While a client is permitted to discharge his attorney without cause, this is allowed not because the attorney's interest in per-

---

[5]Compare the following language in *Gage*: "The relation between them is such that the client is justified in seeking to dissolve that relation whenever he ceases to have absolute confidence in either the integrity or the judgment or the capacity of the attorney." (136 Cal. at p. 172.)

forming his services and obtaining his fee is unworthy of protection but because of the importance of the client's interest in the successful prosecution of his cause of action. (*Gage* v. *Atwater,* 136 Cal. 170, 172 [68 P. 581].) *An attorney's interest in his contingent fee agreement is greater than that of a party to a contract terminable at will,* as to which it has been held that an intentional and unjustifiable interference is actionable." (Italics added; *id.* at pp. 205-206.) It is noteworthy that *Herron* was a unanimous opinion of this court authored by the same justice who authored the concurring opinion in *Salopek* v. *Schoemann* (1942) 20 Cal.2d 150 [124 P.2d 21], from which the majority also seek support. Of note also is the fact that the *Herron* court relied upon *Gage* v. *Atwater; supra,* 136 Cal. 170, but *not* on *Baldwin* v. *Bennett, supra,* 4 Cal. 392, over which the majority express some concern.

Finally, I point out that by holding that "It should be sufficient that the client has, for whatever reason, lost faith in the attorney, to establish 'cause' for discharging him" (*ante,* p. 790), the majority actually propose a *subjective* test for determining breach in respect to an attorney-client contract. However, for all practical purposes, their rule frees the client even from an obligation of good faith and permits him to escape at will from the terms of his contract. This new rule violates the most basic principle of contract law—that a party's actions will be judged according to objective standards of reasonableness. Ironically and incongruously, the result of the majority's holding is that although an *objective* test is applied to determine whether a contract has been formed (Rest., Contracts, § 230), a *subjective* test is now to be applied to determine whether it has any legal effect.

In sum, I can find no adequate basis in logic, authority or fundamental fairness for a rule which permits one of the parties (the client) to an attorney-client contract to terminate it at will and without cause, while the other party (the attorney) is at all times held to his obligations. I find even less reason to substitute such a rule for the present rule which is supported by the weight of authority and is grounded on more than a century of California precedent. The effective sanction for breach of contract which now exists cannot be discarded by merely saying that there is no breach because there is an implied-in-law covenant that the client can always rid himself of the contract. Such a statement is but an *ipse dixit.* It cannot justify a principle of contract law which treats attorneys differently from other contracting parties.

### III

The majority do not limit themselves to holding that a client has the right to discharge his attorney at any time with or without cause and that

the attorney is thereupon entitled to recover only the reasonable value of his services rendered until the time of his discharge. Having deprived the attorney who is discharged *without* cause of his right to recover according to the contract and having thereby ordained a disaffirmance of all such contracts in such circumstances, the majority proceed to the further holding that the attorney's action for reasonable compensation accrues only when the contingency stated in the original agreement (now disaffirmed) has occurred and the client has recovered either by settlement or judgment on his underlying cause of action.[6] Here again the majority opinion does violence to basic principles of restituiton and the settled precedents of this state.

Generally, as already pointed out, a party who has been injured by a breach of contract may treat the contract as rescinded and sue to recover in *quantum meruit*. (See *McConnell* v. *Corona City Water Co., supra,* 149 Cal. 60 and other authorities, *supra.*) If the injured party elects to treat the contract as rescinded, it is extinguished and terminated; the bargain expressed therein is disaffirmed. (Civ. Code, § 1688; *House* v. *Piercy* (1919) 181 Cal. 247, 252 [183 P. 807]; 17A C.J.S., Contracts, § 413, § 422(1); 12 Williston on Contracts (3d ed.) §§ 1454A, 1455.) Neither party may maintain an action founded on the contract, and its terms are not longer in force. (See *Dyer Bros. Golden West Iron Works* v. *Central Iron Works* (1925) 72 Cal.App. 202, 207-209 [237 P. 386].) This rule has been applied to contracts for employment. In *Brown* v. *Crown Gold Milling Co.* (1907) 150 Cal. 376, 384 [89 P. 86], this court said that "where an employee is, without cause, discharged by his employer during the term of his employment, he may regard the contract as rescinded and sue upon a *quantum meruit* and recover the reasonable value of his services, *as if the special contract of employment had never been made.* [Citations.]" (Italics added.) More specifically, in cases where a client has prematurely discharged his attorney, the courts have allowed the attorney to bring an action in *quantum meruit* without limiting his recovery by the terms of the contract (*Tracy* v. *MacIntyre* (1938) 29 Cal.App.2d 145, 147 [84 P.2d 526]; *Neblett* v. *Getty* (1937) 20 Cal.App.2d 65, 70 [66 P.2d 473]; *Lessing* v. *Gibbons* (1935) 6 Cal.App.2d 598, 607 [45 P.2d 258].)

In *Tracy* v. *MacIntyre, supra,* 29 Cal.App.2d 145, the victim of an automobile accident employed an attorney to prosecute a personal injury suit, agreeing to pay the attorney a percentage of any amount recovered. Subsequently, the client wrongfully discharged the attorney, and the

[6] I find it unnecessary to discuss the situation where the attorney has been discharged *with* cause since it is not involved in the case before us.

attorney elected to sue in *quantum meruit*. The client defended on the ground that payment of fees to the discharged attorney was contingent upon recovery in the underlying personal injury action. The court rejected this defense, saying, "While a client may cancel the retainer contract by an arbitrary discharge of his attorney, he must abrogate the contract in its entirety and not in part. Since such cancellation destroys the provision maturing the fee upon the happening of a contingency, *the attorney is not required to await the outcome of the litigation but may immediately sue for the reasonable value of his services*. [Citation.] . . . An attorney and client, in entering into a contingent agreement, do so upon the basis of the former's character, learning, skill and experience [citation], and upon the implied condition that the former will try the case. [Citation.] But, after substitution, another attorney, posessing different qualifications, would try the action. . . . [I]f, because of the successor's incompetency, no judgment [or settlement were] obtained, the original attorney would receive nothing for his labor. [Citation.]" (At pp. 147-148; italics added.)

Contrary to the majority's position, an attorney bargains for a *limited* risk—the risk that the personal injury action may be unsuccessful under his management. He does not expect to hazard compensation for his services on the client's choice of a substitute attorney when the client may have made an arbitrary and ill-considered decision to change counsel.

In the instant case, the majority have declared that plaintiff-attorney, although discharged without cause, may not use the terms of the contract to measure his damages. Contradictorily, the majority also say that plaintiff's recovery for even the reasonable value of his services is subject to the contractual term that compensation is contingent upon the success of defendant's personal injury suit. By thus selectively retaining parts of the contract, even though it has been disaffirmed, the majority violate the rule that the contract must be preserved or eliminated in its entirety. Their explanation that plaintiff agreed "to take his chances on recovering any fee whatever" (*ante*, p. 792) disregards the substantial change in risk that results when plaintiff is prevented from managing the litigation. In my view, it is unfair to bind plaintiff by a burdensome contractual provision he accepted in exchange for a promised benefit which the majority insist upon withholding from him.

I would reverse the judgment.

Wright, C. J., concurred.

Appellant's petition for a rehearing was denied April 12, 1972. Wright, C. J., and Sullivan, J., were of the opinion that the petition should be granted.