Arthur S. Hirsch, J.
At the commencement of the trial of this action, the parties requested a ruling on the validity of a retainer agreement so that an appeal may be had on a minimal record. At the court’s suggestion, the trial was adjourned and defendant moved to dismiss plaintiff’s second cause of action upon the ground that the retainer is void and violative of public policy. The retainer reads as follows:
“This will confirm my retainer * * * as a 50% contingency retainer and that in the event you discontinue the action without my consent, my liquidated damages shall be in the sum of $25,000.”
For the purposes of this motion, the court ivill accept as true the allegation that the retainer was entered into “ some time after plaintiff had rendered substantial services to defendant and the parties- were able to estimate prospective services.”
The court places no great emphasis on the fact that defendant is an attorney. Suffice it that defendant, as other professional men, realizing their limitations, do not hesitate to engage others of specialized expertise and, more particularly, of greater objectivity. An attorney litigant is an emotional equivalent of a layman and should be regarded in the -same category as any other client. An agreement that is against public policy is not validated because the victim thereof may be an attorney, law professor, or one -of great professional standing and attainment.
Plaintiff will not be permitted to advance principles of law, irrespective of how sound in the abstract, if they be not equitably cognizable in application. A contract between an attorney and *442 a client is not regarded with the same elemental essentials as a commercial contract. The fundamentals of honor, trust, and fairness bar overreaching, even if not so intended, and bar a retainer, if on construction it may sanction an unconscionable result. Section 474 of the Judiciary Law and its predecessor statutes permitting an attorney’s services to be “ governed by agreement” never contemplated nor have they ever been construed to grant an attorney an unbridled right to make any contract nor to burden a client with the commercially frowned upon rule of caveat emptor (see Ward v. Orsini, 243 N. Y. 123, 125; Rodkinson v. Haecker, 248 N. Y. 480, both greatly relied upon by plaintiff; Gair v. Peck, 6 N Y 2d 97, cert. den. 361 U. S. 374, and Cohen v. Ryan, 34 A D 2d 789).
The evil of postulating rules of law for general application is recognized in Ward v. Orsini and Rodkinson v. Eaecker {supra). In the Ward case, the retainer provided that in the event the action was settled without the attorney’s consent, then the client agreed to pay 50% of the amount of the settlement and “ if by the terms of such settlement it is agreed that the party making the same that they will pay for the services of said attorney, then, it is agreed . * * * .the sum to be paid [the attorney] .shall be equal to the .sum paid [the client].”
The court, in approving the retainer, was careful not to establish'a precedent of validating all contracts between attorney and client. After stating that “ The parties were free to make their own contract as to compensation ”, it then added “ The basic question is whether under all circumstances of the case Mr. Ward [counsel] thereby obtained an undue advantage over his client as applied to the settlement made in this case. * * *
At the present standard of professional compensation $300 would not as matter of law be excessive compensation for the services of a reputable and experienced attorney in taking the case and beginning the action. It may well be that in a supposed case the amount received by the client would be so completely out of proportion to the value of the attorney’s services that it would be unconscionable as matter of law to permit him to enforce his contract.” (pp. 127-128, emphasis added.)
Similarly, in the Rodkinson case, the court in stating, “ As a general principle, a lawyer may make a contract with his client either for future or past services ’ ’ added its safeguard against overreaching in the following language: ‘ ‘ The courts are very sensitive of the honor of the bar. Transactions between a lawyer and his client must be fair * * *. [The retainer] is always open, however, for the client to plead or to show that *443 for some equitable reason it should not be enforced.” (248 N. Y., at p. 489).
The fallacy of plaintiff’s position is best demonstrated in the converse in Fellner v. Zuckerberg (202 Misc. 122, revd. in App. Term, 202 Misc. 611). In that action plaintiff engaged counsel to commence an annulment action and paid his fee of $275, in advance. Without informing defendant, who had commenced the action, placed it on the calendar for trial, and rendered other services, she reconciled with her husband and instituted the suit to recover a portion of the fee. The lower court, in a review of the authorities, awarded plaintiff a partial return of the fee upon the well-established rule that the discharge of an attorney does not subject a client to a breach of contract action, citing Martin v. Camp (219 N. Y. 170) and, from Cabdozo, J., in Andrewes v. Haas (214 N. Y. 255), wherein he held that an agreement requiring the client to pay damages would be against public policy and void, stating that the law ‘ ‘ ‘ will not, under the coercion of damages, constrain an unwilling suitor to keep a litigation alive for the profit of its officers. * * * The notion that such a thing is possible betrays a strange misconception of the function of the legal profession and of its duty to society. When the defendants abandoned the action, they became liable to plaintiff for the value of the services then rendered. That is the measure of their liability and of his right. ’ ” (p. 126). Since the entire fee was only $275, the Appellate Term, in considering the services rendered by the attorney, reversed and remanded the action to determine “ the intention of the parties when the payment was made * * * and all the surrounding circumstances. These issues should be explored fully. ’’ (p. 612).
It is fundamental error to apply rigid rules and principles of law to matters of equitable consideration, particularly when the contract, on its face, flaunts judicial reason or is fraught with a potential for an unconscionable result that may taint the honor of the bar.
In Gair v. Peck (6 N Y 2d 97, cert. den. 361 U. S. 374, supra), which this court considers a beacon light of direction for counsel and the court to determine fair conduct between an attorney and client, the court in its review and synthesis of past holdings, particularly as is relevant to the issues herein, observed that:
“ Section 474 [Judiciary Law] confers upon the lawyer no inalienable right to impose on his client, and a retainer agreement becomes unenforcible in some situations where a contract would be enforeible if the parties to it were not attorney *444 and client * * * Sometimes these charges are unconscionable as matter of fact and in other instances as matter of law.” (pp. 106-107), and then selected the following quotations, which the court sets forth as determinative of plaintiff’s retainer:
“ ‘ The word “ unconscionable ” has frequently been applied to contracts made by lawyers for what are deemed exorbitant contingent fees. But by that nothing more has been meant than that the amount of the fee, standing alone and unexplained, may be sufficient to show that an unfair advantage was taken of the client or, in other words, that a legal fraud was perpetrated upon him.’ ” (p. 106).
‘ ‘ ‘ But the recovery may be such that what was in the first instance a fair contract becomes unfair in its enforcement. ’ ” (p. 107).
“ ‘ An agreement to pay an attorney one-half of the recovery of * * * fifty dollars would not by any person be considered to be improper, but if it was for fifty thousand dollars it might be considered quite improper.’ ” (p. 107).
A fee of $25,000 payable on a discontinuance of an action without the attorney’s consent as the attorney’s ‘‘ liquidated damages ” is as a matter of law unconscionable and violative of public policy in that it deprives a client of his untrammeled right to terminate a lawsuit without fear of payment of a substantial penalty. The fact that services were rendered prior to the making of the retainer is counterbalanced by plaintiff’s allegation that the sum of $25,000 was fixed at a time when ‘ ‘ the parties were able to estimate prospective services ” to be rendered by plaintiff. But if defendant determines not to avail himself of those “ prospective services ” he will still suffer the penalty of a substantial payment to plaintiff for services that will not be rendered.
Plaintiff’s citation of California authorities to the effect that where an attorney is discharged without cause, he is not required to prove the reasonable value of his services but may recover the full amount called for by his contract is without merit. A reference to Shephard’s Pacific Reporter Citations (P. 2d) discloses that the entire line of cases cited by plaintiff has been overruled in Fracasse v. Brent (6 Cal. 3d 784).
Accordingly, defendant’s motion to dismiss the second cause of action is granted.
The case has heretofore been set down for trial for the February term when it can proceed on the first cause of action based on quantum meruit, provided no appeal is taken from this decision.