838 F.2d 395
 56 USLW 2481
 FEDERAL SAVINGS AND LOAN INSURANCE CORPORATION, a corporate
instrumentality of the United States of America,
Plaintiff-Appellant/Cross-Appellee.
v.
ANGELL, HOLMES & LEA, a law partnership,
Defendant-Appellee/Cross-Appellant,
and
Van Voorhis & Skaggs, a law partnership, Defendant-Appellee.
 Nos. 87-1546, 87-1593.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Jan. 14, 1987.
Decided Feb. 4, 1988.
 
 Daniel Johnson, Jr., and Robert L. Eisenbach III, Cooley, Godward, Castro, Huddleson & Tatum, San Francisco, Cal., for plaintiff-appellant/cross-appellee.
 Gerald A. Cohn, Phillips Cohn & Greenberg, Orinda, Cal., for defendant-appellee.
 James C. Martin, Crosby, Heafey, Roach & May, Oakland, Cal., for defendant-appellee/cross-appellant.
 Appeal from the United States District Court for the Northern District of California.
 Before ANDERSON, NOONAN and THOMPSON, Circuit Judges.
 NOONAN, Circuit Judge:
 
 
 1
 Most clients would probably be startled by the proposition that they could not fire their lawyer; and even lawyers might find the proposition surprising. In any event, it is not the law of California, which holds that a client's power to discharge an attorney, with or without cause, "is absolute." Fracasse v. Brent, 6 Cal.3d 784, 100 Cal.Rptr. 385, 494 P.2d 9 (1972).
 
 
 2
 This proposition does not completely resolve this case, but it is at the heart of it. Here two California law firms entered into retainer agreements with their client, Fidelity Savings and Loan Association (Fidelity), were fired three weeks later, continued to do work claimed to be for the client's benefit, and seek to retain what they were paid. The strength of their position is that they arranged to be paid in advance. This arrangement, however, cannot affect the controlling principle.
 
 
 3
 At the end of 1981 Fidelity was in deep trouble, advised by independent auditors that it might cease to exist in the following year if adverse trends were not reversed. In January and February of 1982 it lost over $9 million. The handwriting was on the wall. On March 23, 1982 it entered into the retainer agreement at issue here.
 
 
 4
 By this agreement the law firms of Angell, Holmes & Lea and Van Voorhis & Skaggs agreed to represent Fidelity in all actions against the Federal Home Loan Bank of San Francisco, the Federal Home Loan Bank Board, the Federal Savings and Loan Insurance Corporation (FSLIC), the Savings and Loan Commissioner of the State of California, and any entity which acquired Fidelity, provided that the suits related to certain specific subjects including the appointment of a receiver for Fidelity. The contract provided that "the entire amount" should be "deemed to have been earned upon payment" and that none of the amount should be repaid to Fidelity or to any other person "regardless of whether attorneys are for any reason prevented from performing any or all of the services to be performed by attorneys under this agreement."
 
 
 5
 The contract went on to say that the parties "appreciate that FSLIC, or some other person, may challenge the validity of this agreement, and therefore Attorneys are accepting risks hereunder they would not normally accept." The contract noted that in the past FSLIC had "attempted to set aside such agreements." It stated that if FSLIC terminated any right of the lawyers to receive fees not as yet paid the lawyers might elect forthwith to terminate their services. The fees deemed earned when paid were $250,000 to each law firm. In addition, Fidelity agreed to pay the firms a contingent fee of 10 percent of any recovery.
 
 
 6
 Three weeks after the retainer contract was executed Fidelity was placed in a receivership with FSLIC as the receiver. Fidelity Savings and Loan Association v. Federal Home Loan Association, 689 F.2d 803-805-807 (9th Cir.1982). As receiver, FSLIC took over all of the assets and liabilities of Fidelity and acquired the right to hire and fire counsel for Fidelity, 12 U.S.C. Sec. 1729(d), 12 C.F.R. Sec. 569a.6(a)(5). It effectively became the firms' client. As receiver it had the power to reject any contract it considered burdensome. 12 C.F.R. Sec. 569a.6(c)(3).
 
 
 7
 On the same date that the receivership began, April 13, 1982, the special representative of the receiver wrote both law firms as follows:
 
 
 8
 I hereby notify you that your employment by Fidelity in all capacities, and with respect to all legal matters, is hereby terminated, effective on the date of this letter. Without limiting the generality of the foregoing, you shall no longer represent Fidelity, or any successor in interest of Fidelity, in that legal action entitled Fidelity Savings and Loan Association v. Federal Home Loan Bank of San Francisco, et al., Case No. C 82 1389 EFL, United States District Court for the Northern District of California.
 
 
 9
 Each of your firms has received a cash payment of $250,000 from Fidelity. Demand is hereby made upon you to return those monies. If you have rendered legal services to Fidelity, please forward to me a statement supporting any request for payment.
 
 
 10
 The law firms responded to this notice by letter declaring that the receivership was illegal, that FSLIC had no authority to discharge them as attorneys, that they had a contractual obligation to represent Fidelity, and that they rejected the demand for return of the payments.
 
 
 11
 In the course of the next two years the two law firms did a large amount of litigation in matters relating to Fidelity. In all Van Voorhis & Skaggs did work billed at $452,834 and Angell, Holmes & Lea did work billed at $900,000. The two firms resisted when FSLIC brought suit to recover the $500,000 paid in March 1982. The district court was impressed by the amount of time the law firms had put in and, viewing FSLIC's demands as asking for a inequitable forfeiture, gave summary judgment in the firms' favor. We review the law anew and find the district court in error.
 
 
 12
 As simply, clearly and unequivocably as words permit, FSLIC fired the two law firms on April 13, 1985 and asked for the money back. As long as FSLIC then brought suit within the time of the applicable statute of limitations, there was nothing inequitable in not immediately filing suit for the money. As early as March 23, 1982 when the firms designed the retainer contract they were on notice that FSLIC disapproved of this kind of agreement and would seek to void it. After April 13, 1982 the firms were not merely on notice; they were terminated. That they chose to believe that in some way they could keep the fees is not a factor that we should or will consider.
 
 
 13
 The firms' attempt to assure by the contract either their continued employment or at least the retention of the fees is contrary to the federal policy embodied in FSLIC's statutory authority to disaffirm all contracts and its regulatory authority to hire its own counsel. Thus even if the fee provision did not invade the absolute liberty of a client to fire his lawyer, the contract would be unenforceable for reasons of public policy. Cal.Civil Code Sec. 1689(b)(6). The ordinary rules governing a voidable contract of this character then apply. Restitution is to be made. American Law Institute, Restatement of Contracts, Second (1981) Sec. 199; cf. In re Leasing Consultants Inc., 592 F.2d 103, 110 (2d Cir.1979).
 
 
 14
 The firms attach importance to a stipulation entered into by FSLIC with Fidelity on March 15, 1983. By the terms of this stipulation Fidelity's shareholder, Fidelity Financial Corporation, was substituted as the plaintiff in a case originally between Fidelity and the Federal Home Loan Bank Board. The Bank Board pledged not thereafter to intervene in this case. By the terms of the stipulation the suit would continue "for the benefit of ... the real party or parties in interest under the law at the time said judgment is satisfied." As the suit was unsuccessful, it cannot now be said who would have been the real party in interest if it had come to judgment; it could well have been Fidelity Financial Corporation, so that it is not clear that the suit was for the benefit of the receiver. In any event, there is nothing in the stipulation by which FSLIC as receiver rehired the firms to act for FSLIC in this lawsuit. The suit, by terms of the stipulation, was to be conducted with Fidelity's shareholder as plaintiff. No reasonable lawyer could have read the stipulation as a request by FSLIC for his services. The attempt by the firms to magnify, or rather to change, this stipulation into an indication that FSLIC as receiver wanted them as counsel has no basis in the record; and the firms' claim of estoppel--a claim premised on this misperception--has no basis.
 
 
 15
 A savings and loan association placed in federal receivership has the right to challenge the appointment of the receiver, 12 U.S.C. Sec. 1464(d)(6)(A). The firms ask how this statutory right may be exercised if the association has no funds for counsel. The answer is clear: counsel will be paid by court order if the challenge is successful. 12 U.S.C. 1464(d)(8)(A). The right to a fee is contingent. The firms complain: Good counsel, even competent counsel cannot be found on a contingency basis; if a lawyer is not certain of being paid, he will not handle this kind of case; to deprive the association of the use of its funds is to deprive it of all counsel.
 
 
 16
 The firms' own actions belie their argument. They signed the original retainer agreement with keen consciousness that FSLIC might challenge it; from the outset they were aware of the contingency that the agreement might not withstand scrutiny and that there were "risks" that the firms "would not normally accept." As of April 13, 1983 the firms knew they had been fired; they were still willing to litigate on the chance that the receivership might be vacated or the retainer agreement upheld. At some point the time they put into the cases far exceeded the money they had been paid. They were still willing to work on the contingency that in the end their theories might prevail. Lawyers working on a contingency basis cannot successfully argue that competent counsel in this field will not work on a contingency.
 
 
 17
 On its counterclaim Angell Holmes & Lea is entitled to reasonable reimbursement for services rendered before the receivership was instituted.
 
 
 18
 REVERSED AND REMANDED for judgment to be entered consistent with this Opinion.