[L. A. Nos. 1495, 1496.   Department Two.—March 27, 1906.]

## A. L. McCONNELL, Respondent, v. CORONA CITY WATER COMPANY, Appellant.

Construction of Tunnel — Entire Contract — Caving-in — Fault of Owner — Mistake of Engineers — Recovery for Extra Work.— Notwithstanding a contract to construct a tunnel to artesian wells is entire and indivisible, yet, where the work was done as agreed, according to the specifications of engineers employed by the owner, and to their satisfaction, and through the fault of the owner in furnishing defective timber, of which the contractor complained, and the mistake of the engineers as to the strength of timber required, the tunnel caved in, the contractor was not responsible for such fault and mistake, and was not required to make good the loss, but may recover the reasonable value of the extra work required to repair the tunnel.

Id.—Excessive Allowance—Modification of Judgment.—Where an excessive allowance was made for extra work and labor done by the contractor, according to the testimony offered by him as plaintiff, a new trial will not be ordered on that account, but the judgment will be modified to conform to plaintiff's proof.

Id.—Breach of Contract by Owner—Election of Remedy by Contractor—Recovery for Loss of Profits.—Where the owner of the tunnel refused to comply with the contract to furnish material for timbering, and thus made it impossible for the contractor to complete the contract, the latter may elect, among alternative remedies, to treat the owner's repudiation of it as putting an end to the contract for all purposes of performance, and to recover the profits he would have realized if performance of the contract had not been prevented; and in such case the contract would be continued in force for that purpose.

Id.—Damages—Prospective Profits—Special Pleading not Required.—Prospective profits which are not too speculative and remote, and which arise directly and naturally out of an injury or breach of contract, and are not collateral thereto, are always allowed as an element of damage without the necessity of special pleading thereof.

Id.—Difficulty of Proof—Justifiable Action of Court.—It is not
an objection to the recovery of prospective profits directly arising
from a breach of contract that they cannot be directly and abso-
lutely proved. The court is justified in accepting evidence thereof,
which, under the circumstances, is the best and most convincing that
could be offered, even if by possibility the profits might have been
less than the amount allowed, owing to matters which could not be
determined except by a completion of the contract, which defend-
ant's conduct had prohibited.

APPEAL from a judgment of the Superior Court of River-
side County. J. S. Noyes, Judge.

The facts are stated in the opinion of the court.

E. W. Freeman, and A. D. Laughlin, for Appellant.

J. V. Hannon, and Munday & Redd, for Respondent.

HENSHAW, J.—Plaintiff engaged himself to build for
defendant a tunnel "in a good, substantial, and workmanlike
manner to completion," as far as the defendant might direct;
"it being the intention to construct the said tunnel for the
distance of about 1,200 feet to the artesian wells, unless water
in sufficient quantities is encountered before reaching that
point." It was stipulated "that said tunnel shall be con-
structed on the grades and according to the specifications of
the engineers of the party of the second part in charge of
the work. The tunnel will be timbered in a thoroughly work-
manlike and practical manner so as to protect against outward
and also inward pressure." The defendant agreed to furnish
all the lumber needed and required by the plaintiff for the
tunnel, the lumber to be delivered on the ground at the shafts
where it was to be used. The defendant also agreed to make
progress payments during the performance of the work, on
the first of each and every month, of seventy-five per cent
of the work completed during the previous month at the
agreed rate. Work was prosecuted under this contract until
some 764 feet of tunnel had been driven, the progress pay-
ments being made upon the report of defendant's engineers.
At this point of the work the tunnel caved, and repair work
upon it became necessary. This work was done by the plain-
tiff. The case L. A. No. 1,496 is to recover from defendant

the value of such work done up to March 20, 1902. The other action (L. A. No. 1,495) is for similar work done after that date, and also for damages for loss of estimated profits occasioned by defendant's failure and refusal to allow plaintiff to proceed and complete the tunnel.

The action L. A. No. 1,496, for convenience, may first be considered. Plaintiff recovered judgment in the sum of two thousand dollars as the value of such extra work, and the defendant appeals. Its principal contention is that the contract for the construction of the tunnel was entire and indivisible; that under it, notwithstanding the provision for partial payments, as the work progressed, it became the duty of plaintiff to turn over to defendant a completed tunnel, driven and supported in a thoroughly workmanlike manner; in particular, that plaintiff had agreed to timber the tunnel in a thoroughly workmanlike and practical manner so as to protect against outward and inward pressure; that the caving of the tunnel afforded evidence that it was not properly timbered; that it became the duty, therefore, of the plaintiff, at his own cost, to do this repair work; that it was repair work within the terms of the contract for which, treating the contract as indivisible, plaintiff had no cause of action, and the cost of which he himself should have borne. In support of this position, appellant cites many cases, such as *Cox* v. *Western Pacific R. R. Co.,* 44 Cal. 18; *Boyle* v. *Agawan Canal Co.,* 22 Pick. 381, [33 Am. Dec. 749] ; *Seguin* v. *Debon,* 3 Mart. (La.) 6, [5 Am. Dec. 735], to the effect that where a contractor agrees to do certain work, as the grading of a certain section of railroad, in the first case, or the construction of a certain part of a canal, as in the second case, even though the contracts may provide for progress payments, such contracts are entire and the provision for progress payments does not make them divisible. The soundness of these cases and of the proposition of law which they enunciate are not to be doubted, and in the case at bar if the question were whether the contract for the construction of this tunnel was entire and indivisible, there would be no hesitation in saying that it was. But this conclusion does not advance us in the determination of the real question in dispute between the parties. That question may be thus stated: Treating the contract as entire, was the extra work necessitated

by the caving of the tunnel, work within the contemplation of the contract, for which, therefore, the contractor was entitled to no remuneration, or was it work without the contemplation of the contract, for the doing of which he is entitled to compensation? To answer this question, in addition to the provisions of the contract, resort must be had to the evidence. First, as to the terms of the contract, it will be noted that while the contractor agrees to timber in a thoroughly workmanlike and practical manner, so as to protect against outward and also inward pressure, he is controlled in this by the further provisions that the tunnel is to be constructed according to the specifications of the engineers of the company in charge of the work, and that the material for timbering is to be furnished him by defendant. The evidence shows that the plaintiff did drive the tunnel and timber it under the directions and specifications of the supervising engineers of defendant; that progress payments were made upon the certificate of the engineers of the completion according to the terms of the contract of certain portions of the tunnel; that the contractor complained of the inferior quality of the timber which defendant persisted in delivering to him, and of the inadequacy of the timber work which the engineers directed should be done, all without avail; that he was obliged to use the inferior lumber which was furnished; and that the timbering was done under the directions of and to the satisfaction of defendant's engineers. Under such circumstances, notwithstanding that the contract is indivisible, there can be no hesitation in saying that the contractor's responsibility for any completed portion of the work, so done under the direction and to the satisfaction of the engineers, relieves him from responsibility for such an accident as that which befell, that the responsibility for such accident must rest on the defendant, and that, notwithstanding that the contract was entire and indivisible, plaintiff was under no more compulsion to perform the extra work of repairing the cave in the tunnel so occurring than he would have been if it had been occasioned by a willful act of destruction upon the part of the defendant. The work became necessary to enable the contractor to proceed under his contract. It was occasioned by the failure of the defendant to furnish suitable timbers and by the mistake of their engineers as to the strength of

the timbering required. As the contractor was doing his work under the directions and specifications of those engineers he cannot be held responsible for their errors or miscalculations.

Appellant further contends that while the court awarded a judgment in the sum of two thousand dollars for the value of the work and labor so done up to the 20th of March, 1902, the undisputed evidence offered by plaintiff himself shows that only $1,024.60 was actually so expended. To this contention respondent makes no answer, and the record seems to bear out appellant's position in this regard. It is not necessary, however, that a new trial should be ordered. It is sufficient to order, and it is ordered, that the judgment be modified in this regard, with an allowance to plaintiff of the sum of $1,024.60, instead of two thousand dollars, and that, as so modified, it stands affirmed. The appellant will recover his costs upon this appeal.

L. A. No. 1,495. The complaint in this action charged in two counts: The first for the value of the extra labor performed as in L. A. No. 1,496, after March 20, 1902; the second, for the profits of which the contractor was deprived by the refusal of the defendant to allow him to proceed with the construction of the tunnel to its completion as contemplated in their agreement. The court allowed $1,024.60 as the value of such labor, whereas the record discloses that the only testimony in relation thereto was that offered by the plaintiff himself, and his items of expenditure show an aggregate of $898.10. There must be a modification of the judgment in this regard by the difference between $1,024 and $898.10.

The second count sets up a breach of the contract by defendant in refusing and neglecting to furnish the additional lumber needed and required by plaintiff in timbering the tunnel, by which neglect and refusal the defendant rendered it impossible for the plaintiff to perform his part of the contract. The court found, upon sufficient evidence, that the defendant did violate its contract in this regard, and as the furnishing of suitable timber when required by the contractor was a material part of defendant's agreement, the breach justified the plaintiff in treating the contract as at an end. One who has been injured by a breach of contract has an election to pursue any of three remedies. He may treat the

contract as rescinded and may recover upon a *quantum meruit*
so far as he has performed; or he may keep the contract
alive, for the benefit of both parties, being at all times ready
and able to perform; or, third, he may treat the repudiation
as putting an end to the contract for all purposes of per-
formance, and sue for the profits he would have realized if
he had not been prevented from performing. In this last
case the contract would be continued in force for that purpose.
(7 Am. & Eng. Ency. of Law, 2d ed., p. 152; *Fountain* v.
*Semi-Tropic L. and W. Co.,* 99 Cal. 680, [34 Pac. 497].)
It was the last of these remedies which plaintiff elected to
adopt and pursue. But appellant contends that his damages
for loss of prospective profits are too speculative and remote
to justify the award which the court made, and cites numerous
cases where this and other courts have refused to allow pros-
pective profits as an element of damages upon the ground
that they were too speculative and remote. Such is the
undoubted rule, but it is to be noted that this is not an
objection to the inclusion of profits as a proper element of
damages, but is a declaration merely that when they are too
speculative and remote to be capable of anything like reason-
able ascertainment, when they are collateral merely and do
not arise directly or by natural consequence out of the tort
complained of, they cease to become a proper element in the
admeasurement of damages. No one may contest the soundness
of this principle, but the converse of it is equally true, that
where prospective profits are not too speculative and remote,
where they do arise directly and as a natural consequence
out of the injury, they are always allowed as an element of
damage. Says this court in *Shoemaker* v. *Acker,* 116 Cal.
244, [48 Pac. 64] : "An examination of the authorities will
show that the cases in which future profits were rejected as
'speculative' or 'too remote' were cases where the asserted
future profits were entirely collateral to the subject-matter
of the contract, and not consequences flowing in a direct line
from the breach of such contract." And, again, in *Martin*
v. *Deetz,* 102 Cal. 55, [36 Pac. 368, 41 Am. St. Rep. 151],
the *syllabus,* correctly summarizing the views of this court,
declares that remote results produced by intermediate
sequences of cause are beyond the reach of any just or prac-
tical rule or damages, and financial embarrassment and loss

of prospective profits are too remote, contingent, speculative, indirect, and uncertain to come within a legal measure of damages for an alleged wrong in refusing to act as a director of a corporation and inducing others not to participate in the organization. An instructive analysis of the question and of the cases is found in *Howard* v. *Stilwell & Bierce Mfg. Co.*, 139 U. S. 200, [11 Sup. Ct. 500]. But where, as in this case, the loss of profit can with reasonable certainty be shown, both as to the fact and as to the amount, such loss of profits is properly an element of damage. Thus says this court, in *Fountain* v. *Semi-Tropic L. and W. Co.*, 99 Cal. 680, [34 Pac. 498] : "If, however, the breach be of a covenant, the non-performance of which will render it impossible for the other party to perform, or will frustrate the whole purpose of the contract on his part . . . he may decline to proceed in performance and sue for damages, in which case he may recover all loss occasioned by the breach, including profits he would have made if the contract had been performed." And says Sutherland (Damages, vol. 1, p. 113) : "A party to a contract is entitled to recover, against the other party who violated it, damages for the profits he would have made out of it had it been performed. It is no objection to their recovery that they cannot be directly and absolutely proved. In the nature of things, the defendant having prevented such profits, direct and absolute proof is impossible." And, still further (vol. 1, pp. 117, 118), the same learned author very justly says : "Where a party has contracted to perform labor from which a profit is to spring as a direct result of the work done at a contract price, and he is prevented from earning this profit by the wrongful act of another party, the loss of this profit is a direct and natural result which the law will presume to follow the breach of the contract; and he is entitled to recover it without special allegations in his declarations. This he will be entitled to establish by showing how much less than the contract price it will cost to do the work or perform the contract." Plaintiff showed that, in the character of the soil through which he was tunneling,— water-bearing soil,—his profit over and above the contract price was $4.40 per foot. The court found upon evidence that there were about 1,422 feet of tunnel yet to be dug, and gave judgment for the profits upon this at the rate of $4.40

per foot. It is true that the character of the soil might have changed in that distance, and with the change in the character of the soil to non-water-bearing, the profits of the contractor might have been decreased. It is true, also, that water in sufficient quantities might have been encountered before 1,422 feet additional had been driven, in which case, under the contract, the defendant had the right to order a cessation of the work; but as these were matters which could not be determined except by a completion of the contract, which defendant's conduct had prohibited, the court was justified in accepting the evidence, which under the circumstances was the best and most convincing that could be offered.

The judgment in L. A. No. 1,495 is therefore modified by reducing the amount allowed for extra work from $1,024 to $898.10, and in all other respects it stands affirmed. The appellant will recover its costs upon this appeal.

Lorigan, J., and McFarland, J., concurred.

Hearing in Bank denied.