Sam **PHILLIPS** et al., **Plaintiffs,**

v.

**PLAYBOY MUSIC, INC., Defendant.**

**No. EC 74–45–S.**

United States District Court,
N. D. Mississippi, E. D.

Sept. 9, 1976.

---

B. G. Perry, Perry, Taylor & Whitwell, Southaven, Miss., Harold C. Streibich, Harsh, Harsh, Crawford & Streibich, Memphis, Tenn., for plaintiffs.

John C. Satterfield, Satterfield, Shell, Williams & Buford, Yazoo City, Miss., James C. Maupin, Ball, Hunt, Hart, Brown & Baerwitz, Beverly Hills, Cal., for defendant.

## MEMORANDUM OF DECISION

ORMA R. SMITH, District Judge.

The action sub judice was submitted to the court after a non-jury trial. Post-trial briefs have been received and considered. The action is now ripe for decision. This memorandum contains the findings of fact and conclusions of law for which provision is made in Fed.R.Civ.P. 52(a).

Plaintiff Sam Phillips (Phillips) is a citizen of the State of Tennessee. Plaintiff Ray Harris (Harris) is a citizen of the State of Mississippi. The corporate plaintiff, R.S. Productions, Inc., is a citizen of the State of Mississippi, having been incorporated in Mississippi and its principal place of business being in that state. Defendant Playboy Music, Inc., (Playboy) was incorporated in the State of Delaware and has its principal place of business in the State of California. It is therefore, a citizen of the States of Delaware and California. The matter in controversy exceeds the sum or value of $10,000.00, exclusive of interest and costs. The court has in personam jurisdiction of the non-resident defendant by virtue of Mississippi's long-arm statute, Miss.Code Ann. § 13–3–57 (1972). The contract involved in the action is with a resident of the State of Mississippi and is to be performed

in part in said state. The court has jurisdiction of the action pursuant to 28 U.S.C. § 1332.

Plaintiff Phillips is well known and has an excellent reputation in the recording industry. He is best known for his ability to discern new musical talent. Beginning in 1953, Phillips has enjoyed remarkable success in the recording industry.

Plaintiff Harris also is well known and has an excellent reputation in the recording industry. He is best known as an expert producer, mixer and sound engineer and for locating and developing new musical talent.

The history of Phillips and Harris in the recording industry was well known to Lawrence Cohn (Cohn), Executive Vice President of Playboy, during the time pertinent to the issues which are involved herein.

In the first part of 1972, Harris and Phillips decided to build and operate a recording studio at Tupelo, Mississippi. On October 6, 1972, a lease contract was entered into between Phillips and Harris, d/b/a Trace Recording Studio (Trace) and the Natchez Trace Inn, Inc., for the rental of the studio site. The primary term of the lease began on October 1, 1972, and continued for a period of 5 years. The lease contained option provisions for renewal or extended terms. The studio was completed in December, 1972.

On December 1, 1972, Phillips and Harris entered into a written partnership agreement for the purpose of forming a production company to locate and develop new artists in the recording field. The partnership was thereafter known as R.S. Productions.

On December 1, 1972, a lease contract was entered into between Trace and R.S. Productions for the studios, offices and equipment of Trace including the services of a full-time recording engineer, at a monthly rental of $2,000.

During July of 1972, Harris was contacted by Cohn. He had learned of the construction of the studio and was interested in obtaining the services of Phillips and Harris for Playboy. After a period of negotiation, the parties entered into a letter contract dated February 5, 1973. The contract is addressed to R.S. Productions and the acceptance is evidenced by the signatures of Phillips, Harris and R.S. Productions. The contract provides that Phillips and Harris will produce for Playboy master recordings over a 2 year period which are to be utilized by Playboy in connection with the manufacture, distribution and sale of phonograph records. Playboy reserves the right, however, to reject any or all recordings submitted under the contract. Phillips, Harris and R.S. Productions agree in the contract to record and deliver to Playboy, during each contract year, a minimum number of masters sufficient for eight long-playing albums, that is to say 80 masters. Playboy agrees in the contract to pay Phillips, Harris and R.S. Productions certain non-returnable advances against royalties or other amounts which might be earned by them under the agreement. Upon execution of the contract Playboy agreed to advance the sum of $40,000 and during the first year to pay Phillips, Harris and R.S. Productions the sum of $5,000 each month payable on or about the first day of the month. During the second year of the term, Playboy agreed to pay Phillips, Harris and R.S. Productions $4,166.66 each month or a total of $50,000 for the year. In addition, Playboy agreed to pay them, upon completion and delivery of a sufficient number of masters from one artist to constitute one long-playing album or equivalent thereof, that is 10 masters, the sum of $5,000.

Pursuant to the agreement, Phillips, Harris and R.S. Productions provided Playboy with 50 master recordings. These recordings were delivered to Playboy at its offices in Los Angeles, California, by Harris on June 22, 1973. Forty eight of these recordings were accepted immediately, the remaining were rerecorded and accepted shortly thereafter. Thirty additional masters were in the process of being prepared for recording at the time of the contract breach in 1973.

Beginning in February 1973, plaintiffs contracted with five artists, as provided in

the contract. Other musicians, engineers and office personnel were employed to enable Phillips, Harris and R.S. Productions to perform the obligations imposed upon them under the contract.

On May 23, 1973, R.S. Productions, Inc., a Mississippi corporation, was chartered. Prior to the formation of the corporation, all recording contract forms filed with the American Federation of Musicians were inadvertently filed in the name of R.S. Productions, Inc. After May 23, 1973, all contract forms filed with the American Federation of Musicians were in the name of R.S. Productions, Inc. Phillips, Harris and R.S. Productions, Inc., together performed the duties and obligations imposed upon plaintiffs by the contract after the formation of the corporation.

There was no written assignment of the contract from Phillips, Harris or R.S. Productions to the corporation. The defendant did not formally or otherwise accept the corporation as the party with which it had contracted.

During the first week of December, 1972, Tom Takayoshi, Playboy's Director of Sales, telephoned Harris and informed him that Playboy had decided to emphasize the production of "singles" (45 RPM records) instead of long playing albums. This change of policy reduced the number of production sides required, and was at variance with the terms of the contract. Takayoshi informed Harris that payments on the contract were being terminated.

At this time, R.S. Productions, Inc., had on its staff musicians, engineers, and other employees employed for the express purpose of producing the remaining three albums due during the first contract year.

When advised by Takayoshi that Cohn was no longer employed by Playboy, Harris requested Takayoshi to come to Tupelo to discuss the matter more fully. This was never done.

Harris requested written notification of the cancellation of advances. This request was never honored. Harold C. Streibich, Esq., attorney for plaintiffs, wrote to Takayoshi and Playboy a registered letter on December 14, 1973, concerning the matter of the refusal of Playboy to continue payments in accordance with the terms of the contract. In his concluding paragraph Streibich said:

We are, however, instructed to advise you, for and on behalf of Playboy Music, Inc. that unless the subject contract is complied with by Playboy Music, Inc., prior to December 31, 1973, and the monthly payments due our clients Harris and Phillips resumed and paid, that we have been instructed to take all appropriate and necessary legal action against Playboy Music, Inc., its affiliates and subsidiaries to protect our clients' interest and to recover contractual and other damages arising from the breach by Playboy Music, Inc., of subject contract.

Playboy did not comply with the request and this action was instituted.

At the time Playboy stopped the advance of funds to plaintiffs, they were ready, willing and able to produce the three albums due for the first year of the contract and the eight albums which would be due during the second year of the contract.

The court finds that Playboy wilfully and intentionally breached the contract with plaintiffs by refusing to continue the advance of funds in accordance with contract provisions. This action on the part of Playboy was unjustified and plaintiffs are entitled to recover such damages as plaintiffs can establish, proximately resulting from the breach.

In breaching the contract, Playboy refused to pay plaintiffs two monthly payments during the first year of the term aggregating the sum of $10,000 and the $50,000 which was due in equal monthly installments for the second year of the term. The aggregate amount of payments which Playboy would otherwise have paid plaintiffs during the remainder of the contract term had it not been for the breach amounted to $60,000.

Playboy paid plaintiffs under the provisions of the contract before the breach the

total sum of $115,000. This amount is not in controversy between the parties. The parties agreed in the contract that the law of the State of California will control the interpretation and enforcement of any rights arising thereunder. The court is therefore required to apply the law of the State of California to the case.

The Supreme Court of California in *Sobelman v. Maier*, 203 Cal. 1, 262 P. 1087 (1927) stated,

"One who has been injured by a breach of contract has an election to pursue any of three remedies. He may treat the contract as rescinded and may recover upon a quantum meruit so far as he has performed; or he may keep the contract alive, for the benefit of both parties, being at all times ready and able to perform; or, third, he may treat the repudiation as putting an end to the contract for all purposes of performance, and sue for the profits he would have realized if he had not been prevented from performing."

262 P. at 1090, *quoting McConnell v. Corona City Water Co.*, 149 Cal. 60, 85 P. 929, 930 (1906).

The plaintiffs did not elect to bring an action to enforce performance of the contract. They contend that the refusal of Playboy to serve a written notice of termination of payments effectively prevented them from seeking a new contract for the production of records. Playboy contends that by virtue of Mr. Streibich's letter mentioned above, plaintiffs elected to treat the contract as having been breached and to seek damages therefor.

The Supreme Court of California in *McConnell v. Corona City Water Co.*, 149 Cal. 60, 85 P. 929, 931 (1906) quoting from 1 *Sutherland on Damages*, 113, said:

"A party to a contract is entitled to recover, against the other party who violated it, damages for the profits he would have made out of it had it been performed. It is no objection to their recovery that they cannot be directly and absolutely proved. In the nature of things, the defendant having prevented such

profits, direct and absolute proof is impossible."

Again, quoting from *Schumann v. Karrer*, 184 Cal. 50, 192 P. 849, 853 (1920), in *Steelduct Co. v. Henger-Seltzer Co.*, 26 Cal.2d 634, 160 P.2d 804, 814 (1945), the court held that under California law a party "who wilfully breaches his contract 'cannot wholly escape on account of the difficulty which his own wrong has produced of devising a perfect measure of,' or method of proving, damages."

██ The California rule is that "a plaintiff must mitigate damages so far as he can without loss to himself." *Bomberger v. McKelvey*, 35 Cal.2d 607, 220 P.2d 729, 733 (1950).

In *Sackett v. Spindler*, 248 Cal.App.2d 220, 56 Cal.Rptr. 435 (1st Dist.Ct.App.1967) the court said:

It is well established in California that a party injured by a breach of contract is required to do everything reasonably possible to minimize his own loss and thus reduce the damages for which the other party has become liable. . . . From this rule it follows that a person who has been injured by a breach of contract cannot recover damages for detriment which he could have avoided by reasonable effort and without undue expense. . . The question of whether the injured party has acted reasonably in mitigating damages is one of fact."

56 Cal.Rptr. at 447 (Citations omitted).

██ It is also well recognized that "[t]he person injured is only required to act reasonably, and it should appear that his action would result in a probable diminution of the loss." 25 C.J.S. *Damages* § 34 at 708–09 (1966) (Footnotes omitted).

██ It is universally recognized that a corporation may become a joint adventurer for purposes within its corporate powers and that individuals in a corporation may form a joint venture to perform the duties and obligations by contract for personal

services. In such event, the rights and liabilities are the same as partners. *Louis Werner Sawmill Co. v. Binson & Bolton,* 220 Ala. 210, 124 So. 420, 421 (1929); Annot., 60 A.L.R.2d 936–30 (1958).

The primary or original term of the contract was a period of 2 years. Ten months of this period expired before the breach; leaving 1 year and 2 months of the term to be completed. Defendant argues that plaintiffs cannot recover in the action sub judice because plaintiffs did not make an effort to secure a substitute contract for the balance of the term thereby minimizing or eliminating the loss occasioned thereby.

The law is clear, as above-indicated, in California and elsewhere, that "a plaintiff must mitigate damages so far as he can without loss to himself". *Bomberger v. McKelvey, supra.* However, a plaintiff is only required to exercise a reasonable degree of diligence in this regard. The nature, term and other pertinent aspects of the contract, must be considered in light of the circumstances surrounding the undertakings of the contracting parties.

Here, the contract relates to a rather restricted, limited and sensitive area of personal services to be performed by plaintiffs. The agreement does not constitute a contractual arrangement which can be readily or easily negotiated in the average or usual market place. In fact, the evidence shows that Cohn's familiarity with the successful performances of Phillips and Harris in the recording industry prompted him to seek their services in the production of masters for Playboy. The parties were engaged in negotiating the contract over a substantial period of time before the agreement was finally consummated.

The evidence also creates the inference that a contract in the recording industry providing for the payment of non-returnable advances is difficult to obtain. This is especially true when the producer has been under a contract of this nature and is seeking a new contract to take the place of one which has been cancelled by the manufacturer or distributor of the records.

The circumstances surrounding the breach developed in the evidence did not afford plaintiffs a reasonable opportunity to seek a contract with another manufacturer or distributor and reduce or minimize their loss. The court is of the opinion that the evidence does not justify a holding that plaintiffs are entitled to only nominal damages, or to no damages at all, growing out of Playboy's breach of the contract.

It is not the prerogative of the court, however, to fix damages by pure speculation or conjecture, without an evidentiary showing which furnishes a reasonable basis for ascertainment.

Playboy's obligation for the payment of non-returnable advances for the balance of the term after the breach, amounted to $60,000. In order to earn the advances under the contract plaintiffs had the obligation to produce eight long playing albums during each year of the term. Five of the albums were recorded during the first year and the other three were in the process of being recorded at the time of the breach. For the second year, eight more albums were scheduled for recording. Plaintiffs did not undertake to complete the recording of the three albums due Playboy during the first year and the eight due Playboy for the second year. Under such circumstances, the court finds that plaintiffs are entitled to recover the unpaid portions of the non-returnable advances for the entire 2 year term, or the sum of $60,000, but are under a duty to account to defendant for the expenses which they have been able to avoid during that period.

The evidence produced at the trial reflects that Harris was able to secure employment for the period September, 1974, through January, 1975, or a period of 5 months at $550 per month. He was, therefore, able to and did earn during that period, the sum of $2750.00. Studio rentals amounted to $1200. When the contract was breached, Harris released all of staff personnel except the engineer who was retained as a caretaker. This action on his part resulted in a reduction in operating expenses of approximately $500 per week.

Staff reduction for the balance of the term resulted in a savings of $28,000.[1]

Plaintiffs reduced their loss by the following amounts:

| | |
|---|---|
| (1) Earnings by Harris | $ 2,750.00 |
| (2) Studio rentals | 1,200.00 |
| (3) Payroll reduction [56] weeks at $500 per week | 28,000.00 |
| Total | $31,950.00 |

The court, therefore, assesses plaintiffs' damages on the element under consideration at the sum of $28,050 ($60,000 minus $31,950).

Plaintiffs also seek to recover the sum of $250,000 for "special damages for the injury to the reputations of Mr. Phillips and Mr. Harris for the discovery and development of new recording talent, and to Mr. Harris as an expert producer, mixer and sound engineer and loss of good will of the partnership". (Plaintiffs' reply brief at 17). While there is some evidence to support plaintiffs' contention that Playboy's termination of the contract and its failure to adequately promote the sale of plaintiffs' recordings tended to discredit Harris and Phillips in the industry and tarnish their images there, the court finds that plaintiffs have not offered evidence which justifies the court in awarding damages for an injury to the reputation of either Harris or Phillips or for the loss or damage to the goodwill of the partnership. The court does not find that the reputation of either Harris or Phillips has been materially damaged by Playboy in the termination of the contract or that the good will of plaintiffs or their partnership has been damaged in any way.

In conclusion, the court finds that plaintiffs are entitled to recover of Playboy the sum of $28,050 with interest at 8% per annum from the date of the judgment to be entered herein until paid and all costs of the action.

The clerk is directed to enter the final judgment as above provided.

---

1. This sum has been computed on the basis of 52 weeks for the second year of the term and the last 4 weeks of the first year of the term.