[This opinion has been published in *Ohio Official Reports* at 88 Ohio St.3d 146.]

CUYAHOGA COUNTY BAR ASSOCIATION *v.* LEVEY.

[Cite as *Cuyahoga Cty. Bar Assn. v. Levey*, 2000-Ohio-283.]

*Attorneys at law—Misconduct—Six-month suspension stayed—Execution of contingent-fee agreements resulting in excessive fees.*

(No. 99-403—Submitted August 25, 1999—Decided February 23, 2000.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 97-27.

_____

{¶ 1} On October 20, 1997, relator, Cuyahoga County Bar Association, filed a third amended complaint charging respondent, Harold L. Levey of Cleveland, Ohio, Attorney Registration No. 0007068, with several Disciplinary Rule violations. Respondent answered, and the matter was heard by a panel of the Board of Commissioners on Grievances and Discipline of the Supreme Court ("board").

{¶ 2} The panel found that in April 1995, when Casey and Theresa Shandor retained respondent to represent them in a personal injury matter, they entered into a contingent-fee agreement which provided for an hourly charge if respondent was discharged "*whether or not* successful completion" occurred (emphasis *sic*). The panel concluded that by entering into this contract respondent violated DR 2-106(A) (a lawyer shall not charge a clearly excessive fee). The panel also found that respondent continued to negotiate a settlement after he was discharged by the Shandors and refused to return their file, and concluded that he therefore violated 2-110(A)(2) (a lawyer shall not withdraw from employment without taking steps to avoid prejudice to his client and delivering all papers to the client, to which the client is entitled) and 2-110(B)(4) (a lawyer shall withdraw from employment if he is discharged). In addition, the panel concluded that respondent's behavior toward

the Shandors violated DR 1-102(A)(6) (engaging in conduct that adversely reflects upon the attorney's fitness to practice law).

{¶ 3} The panel also examined respondent's advertising, which the Shandors claimed persuaded them to employ respondent. Finding that respondent "could offer no data, [or] method to substantiate the truthfulness" of his advertising claims, the panel concluded that respondent violated DR 2-102(A)(4) (a lawyer shall not use public communication to make a claim that is not verifiable).

{¶ 4} The panel also found that nearly five years earlier, in December 1990, Deborah Maruschke had entered into a similar contingent-fee contract with respondent to represent her with respect to personal injuries she received in an auto accident while a passenger in a car driven by her friend, Christopher Sajka. Sajka also hired respondent to represent him.

{¶ 5} Finding that respondent did not clearly advise Maruschke about the potential conflict with Sajka, the panel concluded that respondent violated DR 1-102(A)(6). The panel also found that respondent's fee agreement called for an excessive fee and that respondent performed work after being discharged, and concluded that respondent thereby violated DR 2-106(A). In addition, the panel found that respondent set up an appointment with Maruschke after being discharged in violation of DR 2-110(B)(4), and that respondent communicated with Maruschke by letter after being notified that she was represented by successor counsel, in violation of DR 7-104(A)(2) (giving legal advice, other than advice to secure counsel, to an unrepresented person with interests that conflict with those of a client).

{¶ 6} The panel found that in March 1996, Fletcher Jernigan hired respondent under the same contingent-fee contract to represent him with respect to an injury received as a result of an automobile striking the front porch of his home. The panel concluded that the execution of the fee agreement violated DR 2-106(A) and that respondent violated DR 2-110(A)(2) because he prejudiced Jernigan's

rights by filing a lawsuit against him after being discharged, even though Jernigan's successor counsel said that respondent's claims for fees and expenses would be protected.

{¶ 7} Further, the panel found that in March 1996, Michael Ruppel employed respondent in a personal injury matter pursuant to respondent's standard contingent-fee contract. When Ruppel later discharged respondent, respondent turned over Ruppel's file to the new counsel and demanded security for his fees. Receiving no satisfaction with respect to this demand, respondent sued Ruppel, the successor counsel, and the insurance company. The panel concluded that by filing a preemptive lawsuit respondent prejudiced his client's rights and so violated "DR 2-110 [*sic*]."

{¶ 8} The panel took into account evidence presented in mitigation, and recommended that respondent be suspended from the practice of law for six months.

{¶ 9} The board "carefully reviewed the record in this matter given the unethical and coercive fee contracts at issue," and adopted the panel's findings of fact and conclusions of law. The board, however, recommended that respondent be indefinitely suspended from the practice of law in Ohio.

_____

*Michael E. Murman,* for relator.

*Charles W. Kettlewell,* for respondent.

_____

**Per Curiam.**

{¶ 10} We have carefully reviewed the record in this matter and find that it does not support many of the findings of the panel that were adopted by the board.

{¶ 11} We find no clear and convincing evidence that respondent continued to negotiate for the Shandors after he was discharged, or that after being discharged respondent refused to turn over the Shandors' file until his expenses and a fee were

paid, or that respondent engaged in intimidating conduct toward the Shandors. Therefore, we do not adopt the findings and conclusions of the board on those matters.

{¶ 12} Nor do we concur with the panel's and board's findings that respondent offered "no data, or method to substantiate the truthfulness" of his advertising claims. The record indicates that respondent was never asked about the specific claims which were part of the panel's and board's findings. We therefore reject the board's finding that respondent violated DR 2-102(A)(4).

{¶ 13} In the Maruschke matter, the panel and board should not have made findings and conclusions about respondent's failure to advise Maruschke about the potential conflict with Sajka. During the panel hearing counsel for relator requested that that count be dismissed, and no evidence at all was introduced on it. We further find that respondent's letter to Maruschke after she discharged him does not appear to have been written as a matter of continued employment, nor does the letter contain legal advice. Therefore, we also do not adopt the conclusions of the board that respondent violated DR 2-110(B)(4) and 7-104(A)(2).

{¶ 14} We do not find clear and convincing evidence that respondent's lawsuits against Jernigan or Ruppel prejudiced those clients and we therefore do not adopt the board's conclusion that respondent's conduct with respect to Jernigan and Ruppel violated DR 2-110(A)(2).

{¶ 15} The panel and board made findings with respect to fee agreements in the Shandor, Maruschke, and Jernigan matters. They concluded that because respondent's contingent-fee agreement with the Shandors provided for an hourly charge if he was discharged "*whether or not*, a *successful completion*" occurred (emphasis *sic*), respondent violated DR 2-106(A). It also found that the execution of a similar fee agreement in the Jernigan matter violated DR 2-106(A). The board relied on our holding in *Reid, Johnson, Downes, Andrachik & Webster v. Lansberry* (1994), 68 Ohio St.3d 570, 629 N.E.2d 431, that when an attorney employed

pursuant to a contingent fee is discharged, the attorney's fee recovery is on the basis of quantum meruit and arises upon the successful occurrence of the contingency. The board said, "In the instant case, Respondent's fee agreement called for reimbursement [*sic*] of a sum certain, *whether or not successful completion"* occurred (emphasis *sic*).

{¶ 16} We agree with the conclusion of the panel and the board that the Shandor and Jernigan fee agreements violated DR 2-106(A). Both contingent-fee agreements provided for payment of an hourly rate if the respondent was discharged, and both were executed after our 1994 *Reid* decision, one in 1995 and the other in 1996. However, we note that respondent claimed that he adopted the fee agreement as a result of reading treatises and attending seminars, that he did not enforce the liquidated damage provision unless there was some recovery by the client, and that he changed his contract as soon as he was informed that it violated the Disciplinary Rule.

{¶ 17} We note that respondent's fee agreement with Maruschke was executed in 1990, several years before our *Reid* decision and at a time when legal commentators may not have condemned such contracts. Since the relator presented no evidence that respondent's fee agreement with Maruschke was otherwise excessive or unreasonable, we do not find that it violated the Disciplinary Rules. Only one item of work appears on respondent's time sheets after the date he was discharged by Maruschke, and that was a letter to the insurance company asserting his lien. Respondent said that if he charged Maruschke for this letter, it was in error. We regard the matter as *de minimus* and find no clear and convincing violation of the Disciplinary Rules.

{¶ 18} Given the circumstances of this case, we adopt the findings and conclusions of the panel and board with respect only to respondent's contingent-fee contracts with the Shandors and Jernigan. Respondent is hereby suspended

from the practice of law for six months with the entire six months stayed.  Costs are taxed to respondent.

*Judgment accordingly.*

MOYER, C.J., DOUGLAS, RESNICK, PFEIFER and LUNDBERG STRATTON, JJ., concur.

F.E. SWEENEY, J., dissents and would publicly reprimand respondent.

COOK, J., dissents.

————————————

**COOK, J., dissenting.**

{¶ 19} I concur with the findings of the panel and with its recommended sanction of a six-month suspension.

————————————