OPINION
{¶ 1} Plaintiff-appellant, Norbert M. Doellman, Jr., appeals from the judgment of the Warren County Common Pleas Court, wherein the court overruled Doellman's objections to the March 17, 2006 magistrate decision that limited his recovery of attorney fees to $351.32 with interest at the statutory rate from July 23, 2003.
 {¶ 2} The facts underlying this appeal are as follows:
 {¶ 3} On March 30, 2001, Doellman and defendant-appellee, MidFirst Credit Union, Inc. ("MidFirst"), entered into a contingent fee agreement in which Doellman would represent *Page 2 
MidFirst in designated collection cases. The terms of the agreement, in pertinent part, stated:
 {¶ 4} "The fee of Attorney shall be contingent upon the result obtained. There shall be no legal obligation by Client to pay Attorney any fee if nothing is recovered from the adversary.
 {¶ 5} "However, Client is responsible for all expenses incurred in the prosecution of the claim. Client gives permission to Attorney to advance the payment of costs and expenses, but Client acknowledges the Client remains responsible for payment of said costs and expenses and agrees to reimburse Attorney for any such costs and expense for which Attorney advances payment. Client may reimburse Attorney as costs and expenses are incurred or, if Client reimburses Attorney upon settlement, Client agrees that such costs and expenses shall be paid out of Client's portion of the settlement proceeds.
 {¶ 6} "The legal fee of Attorney shall be thirty-three and one-third percent of the gross amount recovered if settlement is achieved without the necessity of filing suit; thirty-three and one-third percent of the gross settlement or judgment if it is necessary to file suit; and thirty-three and one-third percent of the ultimate gross settlement or judgment following the trial and any appeal undertaken by the adversary.
 {¶ 7} "In the event of discharge by Client, Client shall be indebted to Attorney for legal fees based upon the value in Butler County, Ohio of legal services rendered and for any costs and expenses advanced by Attorney." (Compl., Ex. A.)
 {¶ 8} From March 2001 until April 2003, Doellman was assigned between 40 and 50 cases for collection, and he received contingency fees on approximately 20 of those cases. However, early in 2003, MidFirst became aware that Doellman had failed to forward payments received on MidFirst accounts from debtor, Charles Carrico. Carrico had *Page 3 
contacted MidFirst requesting a payoff for his account. Because MidFirst had no knowledge of the payments made to Doellman, the balance on Carrico's account was much higher than expected. Consequently, MidFirst confronted Doellman. In a response letter, Doellman provided that he had received payments totaling $3,825.57 from Carrico in March and May 2002 and February 2003. He also indicated that he would forward $2,550.38 to MidFirst as their payment per the contingent-fee agreement. Doellman subsequently issued a check to MidFirst from his personal account for $2,550.38; however, the check was returned unpaid for insufficient funds. At trial before the magistrate, Doellman testified that he deposited the funds into his personal account because he did not have checks for his IOLTA account, but he intended to promptly pay MidFirst its contingency fee. Doellman further stated that MidFirst owed him approximately $10,000 at the same time, and that he wrote several checks from that account believing MidFirst was going to pay him. According to Doellman, when MidFirst failed to make the $10,000 payment as promised, the checks he wrote were dishonored by the bank.
 {¶ 9} On April 23, 2003, MidFirst requested that Doellman place a hold on all collection activities regarding MidFirst accounts. As noted by the magistrate, there is some discrepancy whether this date terminated Doellman's employment with MidFirst, since communications continued into the summer of 2003 between Doellman and MidFirst concerning the collection of payments on certain cases. Furthermore, MidFirst's senior director did not advise Doellman until December 12, 2003 that he had breached his contract and was due no more compensation.
 {¶ 10} On March 30, 2005, Doellman filed a complaint seeking damages for 33.3 percent of the balance due to MidFirst from 20 debtors. Exhibits B1 through B20 of the complaint contained 20 invoices sent to MidFirst indicating the principal and interest owed by *Page 4 
20 debtors and an estimated contingency for each. In total, Doellman demanded $73,159.86, in addition to prejudgment interest from May 10, 2003, fees and costs.
 {¶ 11} At a bench trial before a magistrate in January 2006, Doellman testified that he spent 84.4 hours working on 16 of the 20 cases mentioned in the complaint. He also testified that $195 per hour is an amount reasonable for an attorney with more than 20 years of collection experience in Butler County. Therefore, the total Doellman sought was $16,458.[1] The record, however, demonstrates that MidFirst collected payments on only three of the 16 cases. On two of the cases, the record reveals that MidFirst offset its loss by retaining the amounts left in the debtors' savings accounts at the time the charge off occurred. The total for these accounts was $15.07. The record further indicates that MidFirst withheld Doellman's fee of $351.32 for payments received in the third case.
 {¶ 12} According to the magistrate, Doellman's cause of action for recovery of his fees had yet to arise because the contingency on 13 of the 16 subject cases had yet to occur. The magistrate's conclusion was based upon the Supreme Court of Ohio's holding in Reid, Johnson, Downes,Andrachik Webster v. Lansberry, 68 Ohio St.3d 570, 1994-Ohio-512, which provided that "[w]hen an attorney representing a client pursuant to a contingent-fee agreement is discharged, the attorney's basis ofquantum meruit arises upon the successful occurrence of the contingency." (Emphasis sic.) Id. at paragraph two of the syllabus (reaffirming the court's prior position in Fox Assoc. Co., L.P.A. v.Purdon [1989], 44 Ohio St.3d 69). As MidFirst had received payment for only one account, the magistrate found that Doellman's recovery was limited to 33.3 percent of the recovered amount, i.e., $351.32.
 {¶ 13} Doellman subsequently filed objections to the magistrate's decision. On May 17, 2006, *Page 5 
the trial court overruled these objections and sustained the findings of the magistrate. Doellman filed a timely notice of appeal.
 {¶ 14} On appeal, Doellman raises the following assignments of error:
 {¶ 15} "1. The trial court erred by not giving meaning to the mandate in the Fee Agreement requiring payment upon discharge.
 {¶ 16} "2. The trial court erred by reasoning that payment for his time would create a windfall for Doellman."
 {¶ 17} The standard of review in this case is abuse of discretion. The factors a court considers to determine the reasonableness of a discharged attorney's fees under a quantum meruit claim, in addition to the ultimate amount of quantum meruit recovery by the discharged attorney, are matters to be resolved by the trial court within the exercise of its discretion. See Reid, 68 Ohio St.3d at 577;Goldauskas v. Elyria Foundry Co. (2001), 145 Ohio App.3d 490, 496. An abuse of discretion suggests more than an error in judgment; instead, it implies that the trial court's attitude was unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 18} Upon review of the record, we find that the trial court did not abuse its discretion in adopting the magistrate's decision. In light of the Ohio Supreme Court's holdings in Fox and Reid, the magistrate correctly found that Doellman may recover fees for services rendered on the basis of quantum meruit and upon the successful occurrence of the parties' contingency agreement. Therefore, the reasonable value of Doellman's legal services is $351.32, where the only recovery under the contingent-fee agreement was $1,055, and where the agreement entitled Doellman to 33.3 percent of payments received. Accordingly, the judgment of the trial court will be affirmed.
 {¶ 19} In order to facilitate the disposition of this matter, we will address Doellman's *Page 6 
assignments of error together. Essentially, Doellman argues that the trial court erred in limiting his recovery to $351.32 — 33.3 percent of the payment on only one debtor account-where the fee agreement specified that MidFirst would be indebted to Doellman in the event of his discharge for the reasonable value of his legal services rendered and for any costs and expenses he advanced. Doellman contends that he spent 77.9 hours in preparing cases for collection. He also asserts that the reasonable value of these services, as performed by an attorney in Butler County experienced in collection procedures, is $195 per hour. Thus, the reasonable value of his legal services would be $15,190.50. According to Doellman, his request of $15,190.50 creates a windfall for MidFirst of nearly $57,000, where he has allegedly secured judgments for MidFirst that potentially may result in over $220,000, and where the contingent fee for such amount is approximately $73,000.[2]
 {¶ 20} The Ohio Supreme Court has held that "where an attorney is discharged by a client with or without just cause, and whether the contract between the attorney and client is express or implied, the attorney is entitled to recover the reasonable value of services rendered prior to the discharge on the basis of quantum meruit."
(Emphasis sic.) Fox, 44 Ohio St.3d at 72. The court's rationale was based on the client's right to substitute counsel without showing cause or presenting evidence of legal malpractice or negligence, and the attorney's right to compensation for services rendered. Id. at 71-72. In reaching this conclusion, however, the court did not define what constitutes a reasonable value of services under the contract. Instead, it remanded this issue to the trial court for determination.
 {¶ 21} Subsequently, in Reid, Johnson, Downes, Andrachnik Webster v.Lansberry, the Ohio Supreme Court re-examined its decision inFox and discussed how the amount of quantum meruit recovery should be measured. First, the court held that an attorney who *Page 7 
represents a client on a contingency basis, yet is discharged prior to completing his service, does not have a cause of action for a fee recovery in quantum meruit until the contingency has occurred. Id. at 575. In other words, "the discharged attorney is not compensated if the client recovers nothing." Id. The court's rationale for adopting this holding was explained in Fracasse v. Brent (1972), 6 Cal.3d 784, 100 Cal.Rptr. 385, 494 P.2d 9, wherein the California Supreme Court provided the following:
 {¶ 22} "The basis for the rule was, of course, the fact that until the happening of the contingency, the amount of damages suffered by the attorney could not be ascertained. Having held herein that an attorney henceforth will be entitled to recover only the reasonable value of his services to the time of discharge, the question arises whether his cause of action has accrued at that time. With respect to contingent fee contracts, we hold otherwise for two reasons.
 {¶ 23} "First, one of the significant factors in determining the reasonableness of an attorney's fee is `the amount involved and the result obtained.' It is apparent that any determination of the `result obtained' is impossible, and any determination of the `amount involved' is, at best, highly speculative until the matter has finally been resolved. Second, and perhaps more significantly, we believe it would be improper to burden the client with an absolute obligation to pay his former attorney regardless of the outcome of the litigation. The client may and often is very likely to be a person of limited means for whom the contingent fee arrangement offers the only realistic hope of establishing a legal claim. Having determined that he no longer has the trust and confidence in his attorney necessary to sustain that unique relationship, he should not be held to have incurred an absolute obligation to compensate his former attorney. Rather, since the attorney agreed initially to take his chances on recovering any fee whatever, we believe that the fact that the success of *Page 8 
the litigation is no longer under his control is insufficient to justify imposing a new and more onerous burden on the client. Hence, we believe that the attorney's action for reasonable compensation accrues only when the contingency stated in the original agreement has occurred — i.e., the client has had a recovery by settlement or judgment. It follows that the attorney will be denied compensation in the event such recovery is not obtained." Id. at 792 (Citations omitted.)
 {¶ 24} Next, the court held that the reasonable value of a discharged attorney's services in quantum meruit should be determined in light of the totality of the circumstances, yet the recovery should be limited to the amount maintained in the original contingency agreement.Reid, 68 Ohio St.3d at 576. Factors the court considers relevant include the recovery sought, the skill demanded, the results obtained, and the attorney-client relationship. Id. See, also, Prof. Conduct Rule 1.5(a) (setting forth guidelines for determining the reasonableness of attorney fees).
 {¶ 25} Here, the magistrate limited Doellman's recovery to $351.32 on the basis of quantum meruit, reflecting 33.3 percent of the amount actually obtained by MidFirst as a result of Doellman's services prior to his discharge. According to the record, there was only one collection case in which MidFirst received payment from a debtor yet failed to disburse fees to Doellman under their agreement. In that case, MidFirst collected $1,055 from the debtor subsequent to the assignment of the case to Doellman. Pursuant to the contingency-fee agreement, Doellman was entitled to 33.3 percent of the payment received, i.e., $351.32. In reaching his conclusion, it is apparent that the magistrate considered several of the factors set forth in Reid in light of the totality of the circumstances. The magistrate's decision notes that Doellman claimed he invested 7.7 hours of work on this case, and that he ultimately obtained a default judgment from MidFirst. The magistrate also points out that calculating *Page 9 
damages in accordance with Doellman's figures would result in a windfall for Doellman because 7.7 multiplied by $195 equals $1,501.50, whereas MidFirst only recovered $1055 on the account. Thus, the magistrate found that $351.32 was a reasonable fee based on the result obtained.
 {¶ 26} We agree with the magistrate's conclusion. Pursuant toReid, $351.32 is the maximum amount of Doellman's quantum meruit recovery, for the original contingency-fee agreement specifies that he shall be awarded "thirty-three and one-third percent of the gross amount recovered." Moreover, it is apparent from the record that the magistrate carefully considered the amount Doellman sought, the skill demanded by the case, the actual recovery obtained, and the relationship at the time between Doellman and MidFirst. Thus, we find that the magistrate's determination of fees was based on a thorough consideration of all the relevant factors in this case.
 {¶ 27} We further find no merit in Doellman's claim that the terms of the contract mandate a payment of fees beyond a recovery in quantum meruit. In Reid, the court emphasized that "even if an attorney is discharged without cause, and even if a contingent fee agreement is in effect at the time of the discharge, the discharged attorney recovers on the basis of quantum meruit, and not pursuant to the terms of the agreement." Id. at 573. The court reaffirmed this position inCuyahoga Cty. Bar Assn. v. Levey (2000), 88 Ohio St.3d 146, where it found that a contingent-fee agreement calling for hourly charges if the attorney was discharged regardless of whether the contingency occurred violated DR 2-106(A) which provides that "A lawyer shall not enter into an agreement for, charge, or collect an illegal or clearly excessive fee." Citing its decision in Reid, the court reiterated that when an attorney employed under a contingency-fee agreement is discharged, his or her recovery is "on the basis of quantum meruit and arises upon the successful occurrence of the contingency." Id. *Page 10 
at 148. Consequently, such provision providing for hourly charges in the event of attorney discharge is contrary to the holding in Reid and constitutes a clearly excessive fee.
 {¶ 28} Here, the magistrate quotes the following clause of the fee agreement as supporting the law established in Reid: "There shall be no legal obligation by Client to pay Attorney any fee if nothing is recovered from the adversary." In contrast, Doellman asserts that this clause must be read independently of the clause entitling him to legal fees based upon their value in Butler County, Ohio, in the event of a discharge. The holding in Reid, however, looks to both the agreement and the equities of the situation. Id. at 577. As we stated above, the totality of the circumstances in this case demonstrates that the only amount not based on speculation is the $1,055 actually recovered by MidFirst from Doellman's services. Therefore, occurrence of the contingency in this case yields only a fee of $351.32.
 {¶ 29} We note, however, that nothing in this decision precludes Doellman from recovering his fees, in quantum meruit, for the 13 debtor cases which have yet to be collected. As it is, the supreme court's position that recovery arises upon the successful occurrence of the contingency, Doellman remains entitled to file additional complaints if and when those cases result in a recovery by MidFirst. It should also be pointed out that the trial court must consider an additional factor not anticipated by the supreme court when it adopted this rule, and that is the amount of Doellman's pro rata share of the recovery obtained under the contingency arrangement in the event that MidFirst hires a substitute attorney to finalize the pending collection cases.
 {¶ 30} In conclusion, we do not find that the trial court abused its discretion in adopting the magistrate's decision. Pursuant to the Supreme Court of Ohio's holdings in Fox and Reid, the magistrate considered the totality of the circumstances in the present matter and appropriately determined that the reasonable value of Doellman's legal services in quantum *Page 11 
meruit is $351.32. Accordingly, Appellant's assignments of error are overruled. However, it is ordered that the complaint, as it demands the reasonable value of Doellman's services on the 13 collection cases still pending, is dismissed without prejudice. {¶ 31} The decision of the trial court is affirmed.
WOLFF, J., and FAIN, J., concur.
(Brogan, J., Wolff, J., and Fain, J., of the Second District Court of Appeals, sitting by assignment of the Chief Justice of Ohio, pursuant to Section 5[A][3], Article IV of the Ohio Constitution.)
[1] We note that the calculations differ between the trial record, the magistrate's decision, and appellant's brief. The magistrate indicated that Doellman spent 85 hours on the 16 cases. Multiplied by $195, the total equals $16,575. Moreover, appellant states in his brief that he devoted 77.9 hours to these cases, totaling $15,190.55. For purposes of this appeal, we follow the calculation set forth in the trial record.
[2] As discussed above, this figure is based on Doellman's calculation of 77.9 hours multiplied by $195. The trial record, however, indicates that Doellman is seeking $16,458 (84.4 x $195). *Page 1